Jonathan K. FARNUM, et al.

v.

Robert BURNS, et al.

Civ. A. No. 82–0500 P.

United States District Court, D. Rhode Island.

May 18, 1983.

Max Wistow, Providence, R.I., for plaintiffs.

Eileen Cooney, Donald G. Elbert, Jr., Mark Mandell, John Bomster, Providence, R.I., for defendants.

OPINION

PETTINE, Senior District Judge.

This is an action for fees and costs pursuant to 42 U.S.C., Section 1988. The plain-

---

tiffs' attorney successfully challenged the constitutionality of a senate redistricting plan, which provided that the 1982 Rhode Island senatorial election would be held using district lines formulated in 1974. On August 11, 1982 the court held that the use of the 1974 senatorial lines in the 1982 Rhode Island election would violate the Equal Protection clause of the United States Constitution and thus enjoined the State of Rhode Island from holding its 1982 senatorial elections until such time as a constitutionally permissible plan was devised. Following this opinion, the parties prepared and submitted plans; various motions to intervene, with supporting and opposing memoranda, were filed; counsel conferred with the Court and engaged in motion practice on such matters as legislative privilege, discoverability of the defendants' computer program and the possibility of an interim compromise plan for Providence. A number of rulings and several opinions were issued by the Court. After extensive pre-trial briefing, four days of testimony (much of it expert) and post trial briefing this Court held for the plaintiffs and ordered that a special election be held on June 21, 1983.

*The Fee Award*

The only issue at stake is whether or not the overall fee agreed upon should be increased by some percentage to compensate for the "contingency factor" involved in the litigation. It was further agreed that in determining this the Court would not consider the element of the quality of the attorneys' work because this was reflected in the agreed upon $100.00 an hour rate.[1]

The plaintiff is seeking a multiplier of 100%. He argues that "[u]nder contingency, the Court should appraise the professional burden undertaken—that is, the probability or likelihood of success viewed at the time of filing suit. The Court should analyze the plaintiffs' burden, both in terms of the legal and factual complexity of the case and of the probability of Defendants' liability being proved." Plaintiffs' brief, p. 18.

Plaintiffs' counsel emphasizes that the likelihood of success was profoundly conjectural because he had to face "all the legal resources of the State of Rhode Island, in the form of the Attorney General's Office, and the resources of one of the largest law firms in the state and an imminent election;" in addition, he urges consideration must be given to the critical federal and state constitutional rights vindicated, and the statewide class of voters who have been benefitted by this action.

The defendants strongly object, stating there is no justification for paying any additional amount since the fee being paid will reasonably compensate counsel for their work.

*Legal Conclusions*

■ An adjustment of the "lodestar" fee requires consideration of "the contingent nature of any fee (if such is not reflected in the hourly rate), delay in payment, quality of representation (i.e. on unusually good or poor performance above or below the skill

---

1. At the hearing, counsel for the defendants stated he would have no objection to the overall fee if recomputed at the rate of $100.00 per hour. He did object to any additional payment because of the alleged contingency nature of the suit. The following colloquy took place:

THE COURT: See if I can recapitulate your position? That the parties have come before this Court today, and after some period of discussion, counsel for the plaintiff agree that the hourly rate may be considered at $100 per hour for all counsel without regard to the hierarchy of the firm.

The defendants agree that at that rate they would not contest the $100 hourly payment. This thus leaves for determination, whether or not there should be an upward or down-

ward adjustment as set forth in *Furtado v. Bishop.*

The state, if I understand your arguments, is saying there is no contingency consideration in this case because the plaintiffs were well familiar with the kind of case that was being brought before the Federal Court, having been exposed to it in the State Court, they knew the contingency nature of it and, therefore, are not entitled now, after having been successful, to ask for additional compensation because of it.

Is that your position? Am I correct on that?

MR. ELBERT: Yes, your Honor, that's the state's position.

THE COURT: That is the state's position? I just want to be sure?

already reflected in the hourly rates, exceptional (and unexpected) results obtained etc.," *Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980).

Of these factors, I need only consider the contingency nature of the fee and results obtained.

### a) *Contingency Nature of the Fee and Results Obtained*

■ The fee was entirely contingent on an award by the Court in the event of a successful outcome. Counsel stated they were given $25,000.00 by the plaintiffs to be used for the payment of all out-of-pocket expenses, including experts and consultants; if the plaintiffs prevailed and were awarded a fee, all costs not to exceed $25,-000.00 were to be refunded. Counsel actually spent $24,306.76.

In this case, the plaintiffs did face some very heavy odds which infringed on any probability of success. The plaintiffs sought discovery of a computer source code, developed and used to create the Rhode Island senatorial apportionment plan. This code was a useful tool to support their allegation that the Rhode Island Legislature utilized a constitutionally impermissible approach in developing its reapportionment plan. The Court denied the production of this code.

Furthermore, the case involved difficult State and Federal Constitutional issues relative to the thirty-six districts in Rhode Island. Though we held that the defendants' proposed district lines of one of the districts, i.e. Providence, constituted a political gerrymander in violation of the Nineteenth Amendment to the Rhode Island Constitution, we further held that the thirty-five other districts were valid under the Federal Constitution. In short, the case was not an easy one as is evident in three opinions published by the three judge court and one by me. I need not discuss each of these. It pressed the ingenuity and legal ability of counsel with ever present considerable risks. In the end, the results achieved were distinctively good. As I see it, the assumption of the litigation of this case on a contingency basis was not a viable alternative. It required the investment of a cumulative total of over one thousand hours by three attorneys under pressing circumstances of time and glaring public notoriety without any real promise of remuneration. The contingency factor is designed to compensate counsel for just such risks.

While it is true that there is a risk factor in the litigation of all cases, it is disingenuous not to recognize that the risks are greater in difficult cases. Victory was the sine qua non to compensation and this factor must be considered. As the Fifth Circuit stated in *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981):

Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result. This is neither less nor more appropriate in civil rights litigation than in personal injury cases. The standard of compensation must enable just causes without awaiting sure winners.

Though the only debated issue is the contingency factor, I must note that a public right was vindicated; such vindication is one of the expressed purposes of the act. The complaint prevented an unconstitutional election; it safeguarded the one-man, one-vote principle under the Federal Constitution by preventing the use of the 1974 district lines and it prevented gerrymandering in violation of the Rhode Island Constitution. I conclude that plaintiffs' counsel is entitled to an upward adjustment.

In determining the percentage of the multiplier, I am guided by my prior reasoning in *Palmigiano v. Garrahy,* 466 F.Supp. 732, 733 (D.R.I.1979) wherein I stated:

The contingency factor may justify an upgrading, but this element must be applied with care and be directly related to the degree of the uncertainty of success; when added to the computed fee, the total amount must be reasonable and ethical. In our desire to vindicate public wrongs, we have not cast aside ethical

considerations that hold adequate compensation is that amount which enables a lawyer to serve his client effectively and at the same time preserves the integrity and independence of the profession; that a lawyer should avoid charges which either overestimate or undervalue his advice and service; and that a client's ability to pay is no reason for an excessive charge, though poverty may well require a lesser charge or none at all. American Bar Association's Code of Professional Responsibility, Ethical Consideration 2–18, Disciplinary Rule 2–106; The Canons of Professional Ethics of the Rhode Island Bar Association, Canon 12. An over-expansive interpretation of the fees award act can only do violence to the legal profession. It is neither romantic or emotional to say that surely part of the lawyers' reward must be in his realizations that in a public interest case he is cast in the role of representing a "great deal more than his own interest", *National Association of Regional Medical Programs, Inc. v. Weinberger,* 396 F.Supp. 842 (D.D.C.1975)—he acts in the nature of a private attorney general vindicating a congressional policy to eradicate a public evil. Though the contingent nature of the case is only one of the many considerations, it all too often is overemphasized to justify an unwarranted request by counsel.

I am also mindful of what I stated in *Lamphere v. Brown University,* C.A. No. 75–0140, slip op. (D.R.I.1979), that though the public interest has been vindicated, all too often it is the public that pays. Certainly, this does not necessarily negate the right to additional compensation, but it would do violence to the very cause served if the Court did not exercise its discretion with reserve.

In *Lamphere v. Brown, supra,* I awarded an additional 10% to the attorneys' fees; in *Palmigiano v. Garrahy, supra,* I granted the same percentage as additional compensation. I acknowledge that the granting of a multiplier is, unfortunately, discretionary justice but that is a fact we must live with.

In my opinion, I see no reason for awarding any different percentage here.

*Fee Calculation*

| | |
|---|---:|
| As agreed in open court, 1057 hours at $100 per hour: | $105,700.00 |
| Upward adjustment 10%: | 10,570.00 |
| Costs: | 24,306.76 |
| TOTAL AWARDS: | $140,576.76 |

Plaintiffs will prepare an order in accordance with this Opinion.

