Barbara **MAJOR**, et al.

v.

David C. **TREEN**, etc., et al.

**Civ. A. No. 82–1192.**

United States District Court, E.D. Louisiana.

Sept. 16, 1988.

---

R. James Kellogg, William P. Quigley, New Orleans, La., Lani Guinier, New York City, Stanley Halpin, Steven Sheckman, Armand Derfner, Charleston, S.C., Larry T. Menefee, Birmingham, Ala., for plaintiffs.

William Guste, Jr., John D. Fricke, Robert A. Kutcher, New Orleans, La., Kenneth C. DeJean, David R. Poynter, Baton Rouge, La., Patricia Nalley Bowers, Kendall L. Vick, Eavelyn T. Brooks, New Orleans, La., for defendants.

ROBERT F. COLLINS, District Judge.

This matter is before the Court for determination of appropriate attorneys' fees in the above-captioned matter. For the following reasons, the Court will award attorneys' fees in the amount of $335,846.15 and costs in the amount of $28,288.16 to plaintiffs, Barbara Major, Michael Darnell, Bernadine St. Cyr, Brenda Quant, and Annie A. Smart.

This litigation arose as a class action suit instituted by five black plaintiffs, individually and on behalf of all of those similarly situated. Plaintiffs sought declaratory and injunctive relief pursuant to the Thirteenth, Fourteenth and Fifteenth Amendments to the Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, § 2 of the Voting Rights Act, as amended, 42 U.S.C. § 1973, and 28 U.S.C. § 2201 and § 2202. The plaintiffs objected to the realignment of the State's congressional districts brought about as a result of Act 20 of the 1981 first extraordinary session of the Louisiana legislature. The basis of plaintiffs' claim for relief was that Act 20 in design and effect cancelled, minimized and diluted minority voting strength by dispersing the black majority of Orleans Parish into two congressional districts.

On October 18, 1983, judgment was entered by a three-judge panel composed of United States Circuit Judge Henry Politz and United States District Judges Fred J. Cassibry and Robert F. Collins. The Court found in plaintiffs' favor that Act 20 impermissibly resulted in dilution of minority voting strength. Act 20 was declared illegal and unenforceable, and the defendants were enjoined from taking any action to enforce its provision. The Court further found that the Louisiana legislature was to be given reasonable opportunity to confect a new plan for the election of members to the United States House of Representatives. On February 6, 1984, the Court was presented with a proposal remedy. It was then ordered that the plan be presented to the Attorney General of the United States for approval.

At the February 6, 1984 court hearing, it was decided that the three-judge panel would not be needed to determine the amount of attorney fees and costs to be awarded to plaintiffs. Counsel were ordered to attempt to resolve this matter amicably and to submit an affidavit as to time and expenses. However, the parties were unable to settle the matter, and plaintiffs made a motion for an award of attorneys' fees and expenses. This motion was subsequently referred to the United States Magistrate Alma Chasez for hearing and to make findings of fact and recommendations pursuant to Rule 53, Fed.R.Civ.P.

In her Report and Recommendation, Magistrate Chasez rejected the fee claim by the plaintiffs' attorneys as excessive

and held that such an award would be inequitable and burdensome to the taxpayers of the State of Louisiana as well as an unwarranted windfall to counsel for the plaintiffs. Plaintiffs seek approximately $750,000.00 in legal fees for investing approximately 2600 hours of legal work in this litigation. Magistrate Chasez held that figure to be in stark contrast to the sum of approximately $80,000.00 which was paid to counsel for the defendants in both fees and cost reimbursement. Consequently, the Magistrate recommended that counsel for plaintiffs be awarded $135,969.40 in fees and $12,572.62 in costs for prosecution of the main action, and $39,618.00 in fees and $6,221.17 in costs in connection with the motion to assess attorneys' fees. Both plaintiffs and defendants have filed objections to the Report and Recommendation of Magistrate Chasez. The matter is presently before the Court for a determination of whether Magistrate Chasez was correct in her recommendations.

Generally, a determination by the magistrate of nondispositive motions that have been referred by a district judge will not be modified by the district court unless clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); *Industrial Risk Insurers v. Creole Production Services, Inc.,* 568 F.Supp. 1323, (D.C.Alaska 1983), *aff'd,* 746 F.2d 526 (9th Cir.1983). However, a district judge is not limited to a clearly erroneous standard when reviewing a magistrate's recommendations on the issue of attorney fees. He may reject a magistrate's recommendation on the basis of a different determination of credibility. *Louis v. Blackburn,* 630 F.2d 1105 (5th Cir.1980). The Court is therefore not bound to follow the recommendation of Magistrate Chasez and may exercise its discretion in determining the attorneys' fees in the instant action. *Yates v. Mobile County Personnel Board,* 719 F.2d 1530 (11th Cir.1983).

1. The standards for awarding attorneys' fees under the Voting Rights Act are the same that govern awards under § 1988. *Coalition to Preserve Houston v. Interim Board of Trustees of the*

Plaintiffs have objected to: (1) the 50% across-the-board reduction in the hours claimed by their attorneys; (2) the deduction of all hours billed by their attorneys in connection with the administrative proceeding under Section 5 of the Voting Rights Act; (3) the disallowance of recovery of all fees for expert witnesses; (4) the hourly rates which the Magistrate recommended for each attorney; (5) the Magistrate's recommendation that attorneys who did not appear on the pleadings receive no compensation for work performed; (6) the findings of the Magistrate that there was nothing novel or difficult in the questions presented in the litigation, that the litigation required no exceptional legal skill on the part of plaintiffs' attorneys, that plaintiffs incurred no risk of not prevailing in this litigation and that civil rights litigation is not undesirable as being contrary to the facts in this litigation and the law; (7) the disallowance of certain litigation expenses; and (8) the fact that the Magistrate did not award fees and expenses which are adequate to attract competent counsel to represent other plaintiffs in civil rights litigation. Defendants maintain that plaintiffs are not entitled to attorneys' fees and costs and object to the Magistrate's Recommendation on that basis.

### A. Attorneys' Fees are Appropriate

Defendants have flatly denied that plaintiffs are entitled to any fees because plaintiffs have won only a Pyrrhic victory which is not worthy of a fee award. Although the State concedes that plaintiffs did achieve a reapportionment of the metropolitan New Orleans congressional districts, they argue that this was a hollow victory because the black plaintiff class elected the same white representative that they had before. It is clear to the Court that this attitude of defendants is partially what has made the instant litigation balloon to its current proportions.

42 U.S.C. § 1988 [1] provides:

*Westheimer Independent School District,* 494 F.Supp. 738, 742 (S.D.Tex.1980), *dismissed,* 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981); *see also, Hensley v. Eckerhart,* 461 U.S. 424, 433

In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–83, 1985, 1986] title IX of Public Law 92–318 ... or title VI of the Civil Rights Act of 1964 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Similarly, 42 U.S.C. § 1973*l* (e) states:

In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Therefore, the threshhold question is: who is the prevailing party in this case? It is clear and undisputed that the plaintiff class prevailed. The fact that the first set of elections held under the new congressional plan did not produce a black congressperson is irrelevant. What is important is that plaintiffs' goal in creating the opportunity for the election of a black candidate was realized. *Hennigan v. Ouachita Parish School Board,* 749 F.2d 1148 (5th Cir.1985). As the Supreme Court has stated in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), "A typical formulation is that 'plaintiffs may be considered prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Id.* 103 S.Ct. at 1939, *quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978). *See also, Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Brown v. Culpepper,* 559 F.2d 274, *reh. denied,* 561 F.2d 1177 (5th Cir.1977).

Modern civil rights legislation reflects a heavy reliance on the salutary effect of the award of adequate attorney fees. Judge Sharp, of the Northern District of Indiana, urged this point quite clearly when he stated in *Grooms v. Snyder,* 474 F.Supp. 380 (N.D.Indiana 1979):

All of these Civil Rights laws depend heavily upon private enforcement and fee awards have proved an essential remedy. In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If *private citizens* are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate those rights in court. 1976 U.S.Code Cong. & Adm. News 5910. If successful plaintiffs were routinely forced to bear their own attorney fees, few aggrieved parties would be in a position to advance the public interest by invoking the powers of the federal courts.

474 F.Supp. at 384.

The standard for awarding fees to successful plaintiffs arguably contains an exception to the almost automatic award of attorneys fees under 42 U.S.C. § 1988. As the Court in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 observed, a court may use its discretion to deny an award of fees where "special circumstances" would render an award unjust. However, defendants have not presented any "special circumstances" which would justify a denial of attorneys' fees in this case. As a result, the State's allegation that this case represents a hollow victory is unfounded. The Court therefore has no reservations in holding that plaintiffs are the prevailing party and are entitled to a reasonable amount of attorneys' fees and reimbursement of costs.

▬ In analyzing the amount of fees and costs to be compensated, the Court will differentiate the fees and expenses sought in connection with the handling of the prin-

n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983) (discussing indications in legislative history that standards for fee awards should be the same under § 1988 and the 1964 Civil Rights Act).

cipal litigation from those sought in connection with the handling of the motion for attorneys' fees. The plaintiffs' claim for fees on the main litigation are as follows:

### FEES AND EXPENSES RE PRINCIPAL LITIGATION

| Attorney | Total Hours | Hourly Rate | Total Fee | Total Expenses |
| --- | --- | --- | --- | --- |
| Stanley A. Halpin | 573.25 | $160.00 | $ 91,720.00 | $ 1,863.61 |
| C. Lani Guinier | 691.10 | $160.00 | $110,576.00 | $15,187.52 |
| | | | | $ 3,220.00 [2] |
| R. James Kellogg | 510.20 | $135.00 | $ 68,877.00 | –0– |
| Steven Scheckman | 214.70 | $125.00 | $ 26,837.50 | $32,240.46 |
| William P. Quigley | 483.43 | $125.00 | $ 60,428.75 | –0– |
| Armand Derfner | 28.0 | $175.00 | $ 4,900.00 | –0– |
| Total Lodestar | 2,500.68 | | $363,339.25 | $52,511.59 |

The plaintiffs also request a multiplier of two which would give a total attorneys' fee award on the principal litigation of $776,678.50.

 In determining reasonable attorney fees and expenses, the Court must apply the factors articulated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). The *Johnson* court applied what is known as the lodestar method and then adjusted this figure upward or downward on the basis of twelve factors. These elements are: (1) time and labor required; (2) novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the clients; (12) awards in similar cases. The lodestar figure is obtained by determining the number of hours reasonably spent on the case by plaintiffs' attorneys and a reasonable hourly rate for those services. These two factors are then multiplied. The result constitutes the lodestar amount. This approach has consistently been approved by the Fifth Circuit and the United States Supreme Court as well. *Hensley v. Eckerhart*, 461 U.S. 424,

103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575 (5th Cir.1980).

There is some argument that the *Johnson* factors are now obsolete in light of *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), in which the United States Supreme Court indicated that most of the *Johnson* factors will ordinarily be reflected in the lodestar. For example, novelty and complexity of the issues and the "quality" factor should be reflected in the number of hours required. 465 U.S. at 899, 104 S.Ct. at 1549; *accord, Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 3098–99, 92 L.Ed.2d 439 (1986). However, the effect of the Supreme Court's ruling in *Blum v. Stenson* does not diminish the importance of the *Johnson* factors. *Blum* merely provides that many of the factors will be reflected in the time and rate, or lodestar computation, rather than at the second, or adjustment, stage of the calculation. *Daly v. Hill*, 790 F.2d 1071 (4th Cir.1986). Thus, the method enunciated in *Blum* gives more meaning to the lodestar computation and the use of the *Johnson* factors.

### B. Time and Labor Required

Plaintiffs request compensation for 2,500.68 hours of attorneys' time in connection with the principal litigation. This time is documented by affidavits supplied by

---

**2.** Ms. Guinier seeks $3,220.00 for time spent by Ms. Janice McCaughan, a law student, on various tasks performed under her direction. This sum represents 80.5 hours work at $40.00 per hour.

counsel, their depositions and testimony before the Magistrate. While the State does not contest the accuracy of counsel's affidavit as to the number of hours expended, it does contest the necessity for the investment of so much time. More specifically, defendant argues that there was duplication of effort amongst counsel, and performance of non-legal work by an attorney when such work could have been performed by clerical staff or paralegals. Defendants also contend that there was a disproportionate amount of time spent in preparation for court as compared with time spent in trial, an excessive amount of conference and telephone calls, working time was included with travel time, and non-working travel time was erroneously billed. Additionally, the State objects to being charged for counsel's time which was devoted to the administrative proceeding under Section 5 of the Voting Rights Act which formed no part of this litigation, which, according to the State's calculations, amounts to 207.40 hours of attorneys' time.

■ Plaintiffs' attorneys testified by affidavit and direct testimony at the hearing before the Magistrate that in their professional opinion this time was both reasonable and necessary for the proper representation of their client's interest in this litigation. As a general rule, the statement of counsel as to his independent professional judgment on how to best represent his client carries great weight with the Court. Nevertheless, the Court must arrive at a fee which is fair, just and equitable to counsel for plaintiffs and to the citizens of the State of Louisiana who must ultimately bear the burden of paying for the attorney fees in this case.

■ Where hours are fully documented and there is no question that the time has in fact been spent by an attorney, the trial court can only reduce time based on specific factual findings justifying particular reductions. *See, e.g., Northcross v. Bd. of Education of Memphis,* 611 F.2d 624 (6th Cir.1979); *Tasby v. Estes,* 651 F.2d 287, 289–90 (5th Cir.1981); *see also, National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319 (D.C.Cir.1982).

Although some courts have approved of a small percentage reduction for duplication of effort where there are multiple attorneys *(see, e.g., Northcross, supra),* in no instance has an across-the-board reduction of half of documented hours without explanation and without specific fact finding been approved.[3] Thus, a fact finder should not engage in "monday-morning quarterbacking," but should follow the basic principle that if hours spent could have been properly billed to a client, then they should be presumed to reflect a reasonable amount of time spent. *See Johnson v. University College of the University of Alabama,* 706 F.2d 1205, 1207–208 (11th Cir.1983); *Pennsylvania v. Delaware Valley Citizens' Council,* 106 S.Ct. at 3098–99. It has been held that once a plaintiff has established the amount of fees, a defendant may not respond by generalized objections but must come forward with particularized evidence to justify reduction of the amount requested. *National Ass'n of Concerned Veterans v. Secretary of Defense, supra,* 675 F.2d at 1337–38; *Tasby v. Estes,* 651 F.2d 287, 289–90 (5th Cir.1981).

In the present case, the 50% across-the-board reduction is unsupported by any evidence and, indeed, does not purport to be supported by any factual determination, but rather because the Magistrate "simply feels" that the case could have been tried in that time.[4] F & R, p. 8. The only evidence which justifies such a decision seems to be the hours billed by private counsel for the defendants.

■ Defendants argue that a comparison of the hours that their counsel expended and the number of hours for which

---

3. The only evidence in the record which could support the Magistrate's recommendation is the testimony of Mr. Leonard. However, Mr. Leonard's testimony was discredited because of his lack of familiarity with the litigation and conflicts with the testimony of Martin Feldman.

4. No reduction based on *Hensley v. Eckerhardt* was justified. Plaintiffs obtained precisely the relief they sought, a holding that the redistricting violated the Voting Rights Act and a court imposed plan that did not dilute black voting strength.

plaintiffs' counsel has submitted bills support a 50% across-the-board reduction. Time spent by counsel for defendants is not a controlling factor in limiting the number of hours for which plaintiffs' counsel may seek reimbursement. It is but one element to be weighed and considered for a determination of what work was necessary and whether it was done in an expeditious manner. *Harkless v. Sweeny Independent School District*, 608 F.2d 594 (5th Cir. 1979).

It appears from the record that six lawyers were active in the trial of this matter on behalf of the plaintiffs. For the most part, Martin Feldman and one associate handled this matter on the part of the defendants. Other factors become relevant, however. Moreover, the time billed by private counsel for the defendants does not reflect at all the time spent by the three attorneys employed by the State, and there is nothing in the record that reflects the total amount of time those attorneys spent.

Feldman (later to become Judge in this Court) and three other members of his firm billed the State for 864.75 hours over a period of five quarters. Plaintiffs claim compensation for 2,502.48 hours expended over a period of 11 quarters.[5] Feldman explained in his deposition that there were a number of matters that he did not bill the State for before he entered and after he terminated his work in this litigation, and he apparently agreed that plaintiffs' extra effort in this litigation provided the winning margin (Feldman Deposition at p. 2). It is, therefore, illogical to assume that attorneys who win should have spent no more time than attorneys who lose. In the typical civil rights case, where virtually all of the evidence and witnesses are in the hands of the defendants and where plaintiffs have the burden of proof, it can be expected that plaintiffs' lawyers must spend more time than defendants'.

■ Defendants argue and the Magistrate recommends that the time billed by Armand Derfner was not necessary to the litigation and it should be disregarded in its entirety. As evidence, defendants contend that Derfner was not enrolled as counsel of record, therefore, his services could not be very important. There is no precedent that the Court is aware of which states that an attorney may not be reimbursed unless he is enrolled as counsel. Indeed, a court will frequently award fees for law students who are certainly not enrolled on a case. *See, e.g., Jordan v. United States Dept. of Justice*, 691 F.2d 514 (D.C.Cir.1982); *Powell v. United States, Dept. of Justice*, 569 F.Supp. 1192 (N.D.Cal.1983). It is not disputed that Derfner performed the tasks that he has billed, or that these tasks were in furtherance of this litigation. The Court therefore sees no reason to disallow his fees in their entirety.

■ Defendants have asked the Court to reduce the billable time on conferences which lasted over two hours. Their reasoning is that it is not likely that any conference which is over an hour in length is strictly business. Defendants have not presented the Court any evidence that plaintiffs' attorneys were doing tasks other than those related to this case. Those hours will therefore be compensated.

■ Defendants also argue that plaintiffs should not be reimbursed for time spent on the administrative proceedings. On December 17, 1981, shortly after the adoption of Act 20, the State of Louisiana submitted the plan to the Attorney General of the United States for preclearance as required by § 5 of the Voting Rights Act, 42 U.S.C. § 1973c. On June 18, 1982, the Attorney General, through his head of the Civil Rights Section, William Bradford Reynolds, informed the State that he would not object to the plan. Between December and June, plaintiffs' attorneys devoted 207

---

**5.** Plaintiffs expended an average of 230 hours per quarter that they worked on this litigation. Martin Feldman and the members of his firm billed the State for approximately 180 hours per quarter that they were involved in this litiga-

tion. If only a modest five hours per month per state attorney is assumed, the defendants' entire litigation team would have expended the same number of hours as plaintiffs over same period.

hours and related expenses to lobbying the Justice Department to object to Act 20.

Work that is "useful and of a type ordinarily necessary" for the enforcement of civil rights may be compensated even if performed in an administrative proceeding. *Pennsylvania v. Delaware Valley Citizens' Council for Clear Air,* 106 S.Ct. at 3093, *citing, Webb v. Board of Education of Dyer County,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985).

Defendants argue that *Webb* stands for the proposition that attorney fees are not automatically available under § 1988 for work performed in administrative actions. *Webb* involved the termination of a black teacher's employment. The teacher claimed that his firing was unjustified. He challenged his dismissal by way of appeal to a state board. The teacher appeared before the board with his lawyer, but obtained no relief. Subsequently, suit was filed in federal court, complaining of both the dismissal and the board's allegedly racially based decision. Plaintiff received damages and his lawyer petitioned for fees under 42 U.S.C. § 1988. The Supreme Court ultimately ruled that the lawyer was not entitled to fees under § 1988 for the work he did before the board. Although the Supreme Court did not specify its reasons for denying the fee request, it did note that:

> Congress only authorized the district courts to allow the prevailing party a reasonable attorney's fee in an "action proceeding to enforce [§ 1983]." Administrative proceedings established to enforce tenure rights created by state law simply are not any part of the proceedings to enforce § 1983....
>
> \* \* \* \* \* \*
>
> When the attorney's fee is allowed "as part of the costs"—to use the language of the statute—it is difficult to treat time spent years before the complaint was filed as having been "expended on the litigation" or to be fairly comprehended as "part of the costs" of the civil rights action.

105 S.Ct. at 1928 (footnotes omitted).

\* \* \* \* \* \*

The petitioner made no suggestion below that any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type orginarily necessary to advance the civil rights litigation to the stage it reached before settlement.

105 S.Ct. at 1929. *Webb* seems implicitly to endorse the idea that materials from a proceeding for which one could not normally receive compensation under 42 U.S.C. § 1988, if used in a proceeding for which a fee award is available, may be compensable. *See also, Arriola v. T.L. Harville,* 781 F.2d 506 (5th Cir.1986), (prevailing party is not precluded compensation for services rendered in a preclearance submission that bear directly on the issues in an independent lawsuit and where that work is "required and necessary to resolve the issues of the independent lawsuit.")

In another important case, *North Carolina Dept. of Transp. v. Crest Street,* 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986), the Supreme Court specifically held that:

> "[a] court hearing one of the civil rights claims covered by § 1988 may still award attorneys fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation.... Moreover, even if the prior proceeding is not a 'proceeding to enforce' one of the § 1988 civil rights laws, the 'discrete portion of the work product from the administrative proceedings' that 'was both useful and of a type ordinarily necessary to advance the civil rights litigation' ... can be part of the attorney's fees awarded under § 1988."

107 S.Ct. at 342–43 (citations omitted).

The case at bar is a proper candidate for the recovery of attorney fees in accordance with *Arriola, Webb* and *Crest.* Plaintiffs have demonstrated that the services performed before the Justice Department for preclearance submissions was both useful and of a type ordinarily necessary to advance the civil rights litigation. The hours spent on the preclearance are therefore compensable.

■ Defendants' next objection is that plaintiffs' attorneys should not be compensated for non-legal work or legal work which a paralegal, law clerk or secretary could have done. The Court agrees. If work which was done by an attorney could have been done by someone less qualified, that work should be compensated at a lower rate equivalent to the expertise needed. The dollar value of the work is not enhanced just because a lawyer does it. *Johnson v. Georgia Highway Express*, 488 F.2d at 717.

Plaintiffs argue that statistical work can be done only by an attorney. However, it has been held that paralegals can competently perform complex statistical work. *Richardson v. Byrd*, 709 F.2d 1016, 1023 (5th Cir.1983). Additionally, Mr. Derfner, one of plaintiff's counsel, has written at least one article where he states that law clerk or paralegal work

"typically includes such activities as statistical analysis and preparation, factual investigation, and document abstracting, and some aspect of administering a settlement. This is the underside of the court's current willingness to pay for paralegal time. Even when an attorney is a sole practitioner, or one who does not have access to paralegal assistance, rates for performing tasks which might have been performed by such personnel may nonetheless be cut, although the rates of practitioners who do not have paralegals or law clerks will generally be lower than those of practitioners who do."

M. Derfner and A. Wolf, 2 *Court Awarded Attorney Fees*, ¶ 16.03, 16–73 n. 140 (1984). The Court will therefore follow the advice of Mr. Derfner and cut the hourly rate by 50% for the non legal tasks which counsel for plaintiffs performed. *See Rybicki v. State Board of Elections of State of Ill.*, 584 F.Supp. 849, 861 (N.D.Ill.1984).

Defendants have furnished the Court with 147 entries totaling 306.86 hours in which plaintiffs' attorneys did non-legal work. Review of those hours revealed that only a fraction of them involved truly non legal tasks. As a result, the Court will cut the hourly fee by 50% from the lodestar computation for the following hours which were spent in non-legal tasks (see Appendix A).

| Attorney | Hours |
| --- | --- |
| William P. Quigley | 34.06 |
| R. James Kellogg | 2.83 |
| Steven Scheckman | 5.97 |
| Stanley J. Halpin | 18.60 |
| C. Lani Guinier | 3.35 |

■ The next objection is that plaintiffs' submission on travel time is not compensable or is alternatively compensable at a lower rate. Work done while traveling is not as efficient as work done in the office and should therefore be compensated at a lower rate. *White v. City of Richmond*, 559 F.Supp. 127, 131 (N.D.Cal.1982), *aff'd*, 713 F.2d 458 (9th Cir.1983); *McPherson v. School District No. 186*, 465 F.Supp. 749, 758 (S.D.Ill.1978). Similarly, travel time with no work claimed is not compensable, *Ramos v. Lamm*, 539 F.Supp. 730, 745 (D.Colo.1982), or compensable at a low hourly rate. *Cruz v. Beto*, 453 F.Supp. 905 (S.D.Tex.1977), *aff'd*, 603 F.2d 1178 (5th Cir.1979); *Kirksey v. Danks*, 608 F.Supp. 1448 (S.D.Miss.1985). In its discretion, the Court will award only 50% of the hourly fees for non working and working travel time (see Appendixes B and C). The following hours will be compensated at a 50% rate.

| Attorney | Hours |
| --- | --- |
| Stanley J. Halpin | 23.40 |
| C. Lani Guinier | 29.6 |
| R. James Kellogg | 14.52 |
| Steven Scheckman | 10.2 |
| William P. Quigley | 9.58 |

■ Defendants next argument is that there was excessive duplication in plaintiffs' handling of the case. The Court agrees. The Court is empowered to deduct time spent by counsel that is counter-productive. *Henson v. Columbia Bank & Trust Co.*, 651 F.2d 320, 329–30 (5th Cir. 1981); *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 636–37 (6th Cir.1979), *cert. denied, Board of Education of the Memphis City Schools v. Northcross*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862, (1980), *cert. denied, City of Memphis v. Northcross*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

The Court arrived at 128.73 hours of duplicative work by allowing fees for two attorneys to do any given task by dropping the lowest duplicative hours for the third, fourth or fifth attorney. This method allows collaboration but does not foster excessive billing. On the trial dates where all five attorneys billed for their time, the Court allowed fees for those attorneys who led the trial on that particular day.

It would be impossible for the Court to tell which attorney would be best suited to do the work duplicated. The excess 128.73 hours represents approximately 1% of the total hours requested by plaintiffs. Therefore, the following hours which represent a reduction of each attorney's time by 1% should be subtracted from the hours requested by each attorney.

| Attorney | Hours |
|---|---|
| Stanley J. Halpin | 5.73 |
| C. Lani Guinier | 6.91 |
| R. James Kellogg | 5.10 |
| Steven Scheckman | 2.14 |
| William P. Quigley | 4.83 |
| Armand Derfner | .28 |

### 1. Novelty of the Issues

 This litigation did not present unduly novel or difficult issues. It is not a case such as *Bolden v. City of Mobile*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980), which traveled on more than one occasion to the United States Supreme Court. This case was tried once at the district level and did not proceed past that point. At the time that this suit was instituted, the burden of proof in litigation such as this was established in *Bolden*. Within a matter of months thereafter, Congress amended § 2 of the Voting Rights Act in order to legislatively overrule the *Bolden* case. In so doing, the standard established in *White v. Regester*, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); and *Zimmer v. McKeithen*, 485 F.2d 1297 (5th Cir.1973), was reinstated. The standard in *White* and *Zimmer* is substantially lower insofar as burden of proof is concerned than it was in *Bolden, supra. Bolden* required that the plaintiff show intent on the part of the legislature to discriminate. *White* and *Zimmer* merely required that a discriminatory result be established regardless of the intent of the legislature in enacting the questionable statute.

As correctly noted by the State, Stanley Halpin, one of the attorneys seeking fees herein, was lead counsel in *Zimmer v. McKeithen*, and, as such, must be considered intimately familiar with the burden of proof necessary on plaintiffs' part. The Court does not note this fact to say that any voting rights litigation is simple. What it does indicate is that there is no reason to enhance the award given to counsel. The case was not so easy for plaintiffs to prove so as to make the submitted hours unnecessary. The one fact that complicated things was that defendants fought every aspect of this suit. This made it necessary for plaintiffs to work more hours than normal.

### 2. Time Limitation Imposed by the Client or the Circumstances of the Litigation

The record reflects that this litigation proceeded along a reasonable time table. The Court sees no undue constraints imposed upon counsel either by the client or the circumstances of the litigation in bringing this matter to trial.

### 3. Amount Involved and the Results Obtained

The relief requested in this litigation was that Act 20 of the 1981 legislature be declared unconstitutional and that the State be enjoined from attempting to place it into effect. The purpose for which this relief was sought was to have a fairly proportioned congressional district for the State of Louisiana, which would not dilute or minimize the vote of the black citizens. Plaintiffs achieved a 100% victory in that respect. The State was forced to reconsider and pass additional legislation demarcating the various congressional districts in the Orleans, Jefferson and St. Bernard Parish area. The results obtained by the plaintiffs were important and significant and support a substantial fee for the results obtained.

The Court, therefore, finds that plaintiffs should receive attorneys' fees for a total of 2,370.605 hours divided as follows:

| Attorney | Requested Hours | Non-Legal | Duplication | Travel Time | Hours Allowed |
|---|---|---|---|---|---|
| Halpin | 573.25 | 18.60 | 5.73 | 11.70 | 537.22 |
| Guinier | 691.10 | 3.35 | 6.91 | 14.8 | 666.04 |
| Kellogg | 510.20 | 2.83 | 5.10 | 6.26 | 496.01 |
| Scheckman | 214.70 | 5.97 | 2.14 | 5.1 | 201.49 |
| Quigley | 483.43 | 34.06 | 4.83 | 2.415 | 442.125 |
| Derfner | 28.0 | –0– | .28 | –0– | 27.72 |

*Hourly Rate*

■ The Supreme Court has held that the primary element a court should use to determine a reasonable hourly rate is the rate that can be commanded by the attorney in the marketplace. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). This determination is to be made by reference to the 12 factors set out in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). Moreover, where the record is undisputed as to what the appropriate rates are, the fact finder is not free to disregard that evidence and substitute its subjective judgment. *Neely v. City of Grenada,* 624 F.2d 547 (5th Cir.1980).

■ Counsel for plaintiffs argue that the requested rates are amounts that they bill paying clients for similar work. They also argue that the rates are reasonable, and that they were in the low end of the market range for attorneys with similar experience in complex federal litigation in New Orleans, New York, Washington, D.C., and Mobile, Alabama. As the Supreme Court decisions have also made clear, experienced and expert attorneys who exhibit a high degree of skill have the right to have those factors calculated into the hourly rates. *Pennsylvania v. Delaware Valley Citizens' Council, supra.* Thus, an attorney of high skill will command a higher rate than a less experienced attorney doing the same work.

1. Fixed or Contingent Fee

The plaintiffs' attorneys handled this matter on a contingency fee basis. Counsel received no monies from their clients during this litigation to compensate them for the services rendered. Had they not prevailed, they would have been unable to have collected any fee as a result of their efforts. As was stated in *Jones v. Diamond,* 636 F.2d 1364 (5th Cir.1981):

"Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of the result. This is neither less nor more appropriate in civil rights litigation than in personal injury cases. The standard of compensation must enable counsel to accept apparently just causes without awaiting sure winners."

636 F.2d at 1382. Therefore, one of the most important factors to be considered is what precisely was the risk of plaintiffs' failure in this particular litigation.

Once the standard of proof was changed to eliminate the aspect of intent which had been enunciated in *Bolden v. City of Mobile,* the risk of loss on the part of plaintiff was greatly diminished. This legislative overruling of *Bolden* by Congress occurred early on in this litigation, and from that point forward the plaintiffs had a large degree of control over their risk of loss in terms of how well and articulately they could present the facts of the matter to the Court.

In this instance also, the plaintiffs mitigated their risk by working in a team fashion. This was not a question of one lead attorney and one or two associates investing all of their time in one file. Part of the reason that more than one attorney was involved in this case was to spread the risk.

## 2. Length of the Relationship with the Client

▮ Plaintiffs' attorneys had no prior relationship with the client. The plaintiffs are not especially likely to generate any additional fee paying work. Therefore, an amount greater than the fee which one might charge to a regular paying client would be in order in connection with this factor.

## 3. Preclusion of Other Employment

As was succinctly stated by the district court in the fee hearing opinion in *Bolden*, "when an attorney decides to handle a case, he necessarily precludes some other employment because of time constraints. This preclusion is reflected in any fee." In the instant case, however, the court finds that counsel suffered no relevant preclusions. All of them hold themselves out to be experts in the field of civil rights and civil rights litigation. Mr. Halpin and Ms. Guinier were, during the time of the principal litigation, employees of organizations dedicated to the preservation of civil rights and civil liberties. As such, preclusion does not apply to them. *Loewen v. Turnip Seed*, 505 F.Supp. 512 (N.D.Miss.1980). It is not even suggested that the organization with which each is associated was precluded from other employment as a result of this case.

Additionally, shortly before the institution of this litigation, Quigley and Scheckman had only recently entered the private practice of law as partners. The Court has heard of no significant work open to these attorneys during the same time period that *Major v. Treen* was litigated from which they were precluded as a result of their efforts herein. Neither can the Court pinpoint, as far as Mr. Kellogg is concerned, any specific or large client or fees which he has lost as a result of his activities in this litigation.

## 4. Undesirability of the Case

▮ There has been testimony to the fact that civil rights type litigation is undesirable to private attorneys. There is much to be said in support of this proposition.

However, for these particular lawyers, who have built their reputations and practice on civil rights litigation, who hold themselves out as specialists in this area, this type of case is not only not undesirable but most advantageous.

Mr. Halpin and Ms. Guinier at time of trial were both associated with organizations entirely devoted to advancement of civil rights. Messrs. Kellogg, Quigley and Scheckman, although private practitioners in other areas, take pride in the civil rights work which they have done. The defendants have argued that since the majority of the citizens of New Orleans are black, it would appear that these attorneys acted on behalf of the majority rather than on behalf of the minority interests in becoming involved with this litigation. This may be true. However, the majority of the people who would be able to finance future litigation would not be the poorer Blacks whose interests were advanced by this case. They are more likely to be the people who benefitted from the passage of Act 20. The Court therefore finds that these lawyers may suffer economic loss by their inability to attract clients with other types of litigation from the community as a whole.

## 5. The Requisite Legal Skill

This Court certainly recognizes that there is a heavy burden on counsel for plaintiffs in voting rights litigation because they represent an entire class of citizens on an issue that is fundamental to the democratic process. Certainly, there is no basis upon which to criticize any of these attorneys in this litigation for the quality of the work which they put forth.

## 6. The Experience, Reputation and Ability of the Attorneys

The plaintiffs' attorneys have an excellent reputation and considerable experience in the area of civil rights litigation. All of the attorneys appearing before the Court displayed excellent skill and competence and deserve to be justly compensated for turning their talents to fighting an issue of extreme public importance.

### 7. The Customary Fee

*R. James Kellogg* graduated from Columbia University School of Law in May, 1976. Since graduation, Mr. Kellogg has been, as he states, "overwhelmingly devoted to civil rights and civil liberties issues" in his law practice. He has been a staff attorney for the American Civil Liberties Union and the Louisiana Center for the Public Interests. He has served as a consultant to the New Orleans Legal Assistance Corporation, Northwest Louisiana Legal Services, North Louisiana Legal Services, Acadiana Legal Services, Southeast Louisiana Legal Services and New Mexico Legal Services. In addition, he has been affiliated as counsel in various civil rights and civil liberties litigation with the N.A.A.C.P. Legal Defense Fund, the American Civil Liberties Union of Louisiana, the National Prison Project, the Mental Health Law Project, the National Senior Citizens Law Center and many other such groups.

Mr. Kellogg advised the Court that 90% of his litigation experience has been in the federal court system on civil rights and civil liberties issues and that at the time he litigated *Major v. Treen,* he had been involved in approximately ten voting rights cases. Mr. Kellogg seeks an hourly rate of $135.00 in connection with the work he performed herein. Mr. Kellogg has stated that his responsibilities in *Major v. Treen* were the day-to-day operation of the case, handling of the motion practice aspect of this case, and acting as supervisor of trial preparation and overall coordinator of the efforts of counsel.

It is obvious that some of Mr. Kellogg's activities, although necessary to achieve an orderly result, were not entirely legal work. However, the Court has already taken that into consideration in Appendix A. Under the circumstances, the Court finds that an hourly rate of $95.00 would adequately compensate Mr. Kellogg for the work performed. Mr. Kellogg functioned in the capacity of an associate counsel as opposed to lead counsel herein. The above rate is commensurate to what local firms would bill for an associate's time.

*Steven Scheckman* graduated from Tulane University School of Law in 1978. Thereafter, he has been heavily engaged in civil rights and civil liberties issues. Mr. Scheckman states that he was a staff attorney for the New Orleans Legal Assistance Corporation from 1978 through 1981, at which time he entered private practice of law as a partner in the firm of Quigley and Scheckman. Mr. Scheckman was also a member of the Board of Directors of the American Civil Liberties Union on whose behalf he has litigated.

Mr. Scheckman advised the Court that his specialty is litigation involving the institutionalized at local and state juvenile facilities and adult penal institutions. His special emphasis in civil rights and civil rights litigation surrounds the rights of juveniles and juvenile law, the mentally handicapped and prisoners.

In this litigation, Mr. Scheckman's role was to establish the legislative history applicable herein, to analyze and review all documents received in discovery and to determine how they might be used at trial. Additionally, he interviewed various expert witnesses. The Court is of the opinion that an hourly rate of $80.00 would adequately compensate him for the work he performed.

*William P. Quigley* graduated in 1977 from the Loyola Law School. He has served as the general counsel for the American Civil Liberties Union in Louisiana and, in addition, has been counsel to various other public interest and civil rights groups, including the Louisiana Chapter of the Southern Christian Leadership Conference, the Louisiana Coalition on Jails and Prisons, the New Orleans Public Housing Tenants, Inc. He has been co-counsel with the N.A.A.C.P. Legal Defense Fund and with the National Housing Law Project on federal litigation.

At present, Mr. Quigley is associated with Mr. Scheckman in the private practice of law. In connection with this litigation, Mr. Quigley was involved with the legislative history of the Voting Rights Act and with the § 5 submission to the Justice Department. Mr. Quigley advised in connec-

tion with other matters which he handles that he attempts to obtain an hourly fee rate of between $75.00 and $125.00. The Court is of the opinion that an hourly rate of $80.00 would adequately compensate Mr. Quigley for the work performed.

*C. Lani Guinier* is presently employed as assistant counsel for the N.A.A.C.P. Legal Defense and Educational Fund, a non-profit corporation originally founded in 1940 to furnish legal assistance in cases involving claims of racial discrimination and deprivation of constitutional rights. Ms. Guinier graduated from Yale Law School in 1974 and since that time has specialized in civil rights and constitutional litigation. She has served as special assistant to the head of the Civil Rights Division in the United States Justice Department where she helped reorganize the voting rights § 5 unit. Ms. Guinier states that since April, 1981, she has worked primarily on voting rights cases as a staff attorney at the Legal Defense Fund.

Insofar as her activities in connection with this matter, Ms. Guinier testified that she was responsible for drafting all pleadings, amending the original complaint filed herein, drafting all pre-trial findings and conclusions of law, drafting the pretrial memorandum along with Stan Halpin, drafting the post trial findings and conclusions of law, summarizing all trial testimony accurately and succinctly, and formulating the strategy to overcome the advantage to the defendant as a result of preclearance of the Act by the Justice Department. Along with Mr. Halpin, Ms. Guinier worked with the experts to obtain testimony responsive to the new standard under § 2. Additionally, she cross-examined Governor Treen and, in general, worked to establish the lack of fairness of the Act sought to be overturned. Ms. Guinier seeks an hourly rate of $160.00 for the work which she has performed in connection with this matter.

There is no doubt that Ms. Guinier is a very well-trained, highly qualified professional in the area of civil rights. However, the Court is of the opinion that an hourly rate of $130.00 will adequately compensate Ms. Guinier for the work performed in this matter.

*Stanley A. Halpin, Jr.* graduated from Tulane Law School in 1965. Prior to that time, he had received a PhD in political science from George Washington University having written his doctoral dissertation on the Voting Rights Act of 1965. Shortly after his graduation from law school, Mr. Halpin began litigating voting and redistricting cases in Louisiana, and since that time has litigated over fifty redistricting matters on the state, county and local level. Mr. Halpin has stated that he was either lead counsel or sole counsel during those efforts.

From 1971 through 1974, Mr. Halpin litigated as lead counsel the matter of *Bussie v. McKeithen*, 333 F.Supp. 452 (E.D.La. 1971), *aff'd*, 457 F.2d 796 (5th Cir.1971), *remanded*, 407 U.S. 191, 92 S.Ct. 1980, 32 L.Ed.2d 648 (1972), 499 F.2d 893 (5th Cir. 1974). From 1974 through 1976, Mr. Halpin served as lead counsel on behalf of black intervenors in the matter of *Beer v. United States*, 374 F.Supp. 357 (E.D.La. 1974), 425 U.S. 130, 96 S.Ct. 1357, 47 L.Ed. 2d 629 (1976). In addition, Mr. Halpin was intimately involved in the matter of *Zimmer v. McKeithen*, 485 F.2d 1297 (5th Cir. 1973), wherein the so called *Zimmer* factors important in redistricting litigation were established.

It is obvious that Mr. Halpin had his hands on every aspect of this case commencing with his examination of census data and statistical evidence for purposes of analyzing the act for potential discrimination, and continuing with meeting with experts, gathering data and facts, discussing and confecting strategy, updating research on the *Zimmer* factors, researching black participation in the political process and analyzing the effects of past discrimination and representation on the present political spectrum as well as refining the tasks of the various experts. Mr. Halpin not only brought his talents as an attorney to this litigation but also his considered talents as a political scientist. Whereas it appears that Ms. Guinier did much of the reduction of ideas to paper, it does appear

that Mr. Halpin formulated the structure and the direction that this litigation was to take. The Court therefore finds that an hourly rate of $140.00 will adequately compensate Mr. Halpin for the work he did on this case.

*Armand Derfner* graduated from Yale Law School in 1963. He served as Staff Counsel for the Lawyers Constitutional Defense Committee in Mississippi. Mr. Derfner is now in private practice in Charleston, South Carolina, where he is a partner in the firm of McClain & Derfner. Mr. Derfner has been actively involved in vote dilution cases under the Voting Rights Act, arguing several before the United States Supreme Court. Mr. Derfner was a key figure in the legislative developments which resulted in the 1982 amendments to the Voting Rights Act. The Court is of the opinion that an hourly rate of $150.00 would adequately compensate Mr. Derfner for the work he did on this case.

The Court therefore finds that counsel for plaintiffs should receive the following hourly rates:

| Attorney | Rate |
| --- | --- |
| R. James Kellogg | $ 95.00 |
| Steven Scheckman | $ 80.00 |
| William P. Quigley | $ 80.00 |
| C. Lani Guinier | $130.00 |
| Stanley J. Halpin | $140.00 |
| Armand Derfner | $150.00 |

*Multiplier*

Plaintiffs have requested that the Court use a multiplier of two to increase their fees. Multipliers are granted only under certain circumstances. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). The standard for granting a multiplier is succinctly stated in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), wherein the Court noted as follows:

"Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award ... The quality of representation may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show [1] that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged *and* [2] that the success was exceptional ... Because acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award ... Nor do we believe that the number of persons benefitted is a consideration of significance in calculating fees under § 1988."

*Blum*, 465 U.S. at 898–99, 104 S.Ct. at 1549. The Court does not find that any of the circumstances listed by the *Blum* case exist here, and will therefore decline to grant a multiplier.

8. Awards in Similar Cases

The Court has reviewed the appropriate jurisprudence with regard to fee awards in voting rights litigation. The following constitutes a synopsis of cases on this issue.

(a) *Wallace v. House*, 377 F.Supp. 1192 (W.D.La.1974)

Plaintiffs challenged the at-large scheme for aldermanic counsel elections in the town of Ferriday, Louisiana. Plaintiffs proved their claim that the scheme effectively deprived them of their right to vote by cancelling out black voting strength. The trial court awarded successful plaintiffs attorneys' fees on theories of common benefit and private attorneys general.

Plaintiffs' counsel, Stanley Halpin, indicated that he spent 138.5 hours on preparation and trial which was undisputed. The Court awarded Halpin an hourly rate of $50.00 despite finding the customary fee in Louisiana to begin at $35.00 per hour. Noting that Mr. Halpin's expertise in redistricting and voting rights cases allowed him to use time more efficiently than a less experienced attorney, the Court found the hours expended reasonable. In addition to the attorneys' fee award, expert witness fees were awarded in the amount of $250.00, and $65.28 was awarded for airfare. The Court also categorized the cost of developing precinct and registration data as a legitimate plaintiffs' expense. The

total award was for 138.5 hours at $50.00 per hour. The $6,925.00 award was held appropriate; any less would have been unfair, according to the court.

(b) *Coalition to Preserve Houston v. Interim Board of Trustees,* 494 F.Supp. 738 (S.D.Tex.1980)

Plaintiffs in this case prevailed in a Section 5 challenge to the Board. Plaintiffs sought declaratory and injunctive relief against the Board. Plaintiffs' counsel submitted time records reflecting the expenditure of a total of 632.5 hours over approximately 3 years. 105.25 of those hours were expended by paralegals. The court allowed a 10% downward adjustment to account for duplicative legal work.

The Court also categorized the hours according to legal work, legally related activities, such as phone conferences, etc., and routine administrative activities. The hourly rates were higher for those who had been in practice longer, $75–$100; the rate for more recent graduates was set at $50. The result was a rate of $100 per hour for the most experienced attorney, $85 per hour for his informal communications, and $20 per hour for non-legal work performed by him. For the less experienced attorneys, the rates for informal communications were $60 and $30, and the rate for non-legal work was $20 per hour. The total number of hours was 339.50. The total fee award was $44,482.21.

(c) *Bolden v. City of Mobile,* No. 75–297–P (S.D.Ala.1983)

Plaintiffs successfully challenged the at-large election scheme in Mobile, Alabama. Their success came after appealing to the U.S. Supreme Court twice over a period of eight years.

Plaintiffs' attorney sought a total lodestar of $507,748.80 as well as a multiplier of three, which would have resulted in an award of $1,523,245.50. In addition to fees, they sought $96,018.69 in expenses.

The Court found the outstanding skill and determination warranted an enhancement of the hourly fee. The total lodestar was $444,843.00 and a multiplier of two was awarded. The total recovery of attorney fees was $889,686.00. The multiplier was also applied to hours expended preparing their fee request.

(d) *Flowers v. Wiley,* 675 F.2d 704 (5th Cir.1982)

District court ordered defendants to pay plaintiffs a total of $41,659.00 in attorney fees and $971.69 in expenses in a successful voting rights case. The Fifth Circuit's modification of the district court award was based in part on the trial court's allowance of a $150 hourly rate "across the board" without regard to experience and qualifications, the nature of the professional activity or the particular contribution to the success of the lawsuit.

In addition, the court's modification of the award was necessary to prevent compensation for duplicative activity or passive observance while other attorneys performed. The court reduced the enhancement from 50% to 33⅓% for the contingency allowance, holding that a 50% enhancement was an abuse of discretion.

(e) *Lacomb v. Growe,* 541 F.Supp. 160 (D.C.Minn.1982)

Plaintiffs successfully challenged Minnesota's legislative and congressional districts on grounds of malapportionment. Plaintiffs sought to recover $39,982.00 in fees based on an hourly rate of $90 for 444¼ hours and costs in the amount of $9,009.71. There was no dispute as to the reasonableness of the request, the issue was whether the award should be taxed against defendants or against the intervenors. No multiplier was awarded.

(f) *Burton v. Hobbie,* 561 F.Supp. 1029 (M.D.Ala.1983)

Plaintiffs successfully challenged the reapportionment plan implemented by the Alabama legislature and sought attorney fees in the amount of $233,730.00 and $107,297.25 in expenses. The defendants objected to recovery for hours expended on plaintiffs' Supreme Court appeal, alleging that plaintiffs did not prevail.

The district court refused to reduce the compensable hours because plaintiffs failed to prevail on all issues or because some relief was obtained through settlement. Plaintiffs also sought a multiplier of 1.5, but none was granted. The court ultimately awarded plaintiffs $151,575.00 in fees and $106,629.35. There was no dispute as to the reasonableness of the hours claimed or the hourly rates sought.

#### (g) *Farnum v. Burns,* 571 F.Supp. 45 (D.C.R.I.1983)

Plaintiff made successful challenge to a Senate redistricting plan. The only issue was whether the overall fee should be increased by some percentage to compensate for the contingency factor in the case. Plaintiffs sought a 100% multiplier. The Court awarded plaintiffs $105,700.00 in fees for lost hours, a 10% multiplier of $10,570.00 and costs in the amount of $24,306.76.

#### (h) *Graves v. Barnes,* 700 F.2d 220 (5th Cir.1983)

District Court for the Western District of Texas awarded fees to plaintiffs as prevailing parties in an action challenging multi-member districts in Texas. Defendants challenged the court's award as excessive.

On appeal, the court upheld the application of a multiplier of two in order to account for the contingent nature of the case. The court also noted that a multiplier may be appropriate due to delay in receipt of payment and to reflect the quality of representation. The court emphasized that a multiplier is not due in every case, as reasonable calculation of the lodestar may provide adequate compensation. The total award was in the amount of $780,263.20.

#### (i) *In Re Ill. Congressional Districts Reappor. Cases,* 704 F.2d 380 (5th Cir.1983)

The district court increased a fee award by a multiplier of three primarily because of the complexity of the case and the high quality of legal work performed by plaintiffs' attorneys. The only issue at trial was which redistricting plan should be implemented. The district court awarded fees of $128,215.00 for 915.5 hours of legal work by three lawyers; there was no dispute as to the hours spent or the rate of compensation.

The district court increased the lodestar rate by a factor of three, and defendants appealed. The multiplier was based on several factors: (1) contingent nature of the case; (2) complexity of the case; (3) excellent quality of legal work; and (4) service to the public interest.

The Seventh Circuit found that the trial court did not err in considering the contingent nature of the case as one of several factors. The issues involved detailed demographic analyses and required the application of constitutional requirements to these analyses resulting in the complex intertwining of facts and law. The factual issues were not simple nor were the legal issues straight forward. Public interest was served by successfully persuading the court that one map was the best of the three at issue.

The Appellate Court found the multiplier of three excessive. Although the work quality was fine, it did not justify an hourly rate increase from $165 to $495. The court reasoned that the hourly rate took into account the attorneys' expertise. Where the hourly rate is high, a multiplier of three results in an excessive bonus. Accordingly, the Appellate Court reduced the multiplier of three to 20%.

#### (j) *Rybicki v. State Board of Elections,* 584 F.Supp. 849 (N.D.Ill.1984)

Black and Hispanic plaintiffs successfully challenged an Illinois legislative redistricting plan and sought attorney fees. However, the classes of Republican and suburban interest plaintiffs were unsuccessful, and their petition for attorneys fees was denied. Defendants objected to Black and Hispanic plaintiffs' request on several grounds, including duplicative efforts, excessive hourly rates and the 20% multiplier.

The court found the hourly rates reasonable and customary for the firm seeking

fees and cost incurred in representing the black plaintiffs. Although the case was complex, the Court reasoned that no multiplier was warranted, finding that the $170 hourly rate reflected the quality of the attorneys' work as well as the complexity of the case. The lodestar was $230,695.25 for the firm representing one group of plaintiffs.

Two Illinois legislators filed the initial complaint and continued to act as co-counsel during trial. The defendants objected to fees for the *pro se* litigants who were state legislators. The court made a fee award. However, it reduced the lodestar because there were no contemporaneous time records, some work was duplicative of attorneys' efforts and some of the work was non-legal. The two legislators were awarded fees based on a $100 hourly rate.

Attorneys for the Hispanic plaintiffs were awarded a lodestar of $78,580 at an hourly rate of $100 with the exception of travel time for which the court found $35 per hour reasonable. No multiplier was awarded, as the hourly rate was adequate compensation reflecting the complexity of the case.

(k) *Jordan v. Allain,* 619 F.Supp. 98 (N.D.Miss.1985)

Plaintiffs successfully challenged two Mississippi redistricting plans and moved for an award of attorney fees. This case involved two evidentiary hearings and a Supreme Court appeal as well as work expended on post-judgment relief and preparation of motion for an award of attorney fees.

The Court found that even though five attorneys were involved and large number of hours were spent on the second hearing, the number of hours considered were reasonable. However, the court reduced the hourly rates ranging from $75 to $135 to rates ranging from $65 to $100 based on the prevailing rates in the Northern District of Mississippi. Only one attorney, Frank R. Parker, whose representation was considered superior was granted an enhancement of 50%. The court found an across-the-board enhancement unwarranted.

(*l*) *Kirksey v. Danks,* 608 F.Supp. 1448 (S.D.Miss.1985)

The Court found that plaintiffs' lawsuit was a significant catalyst in achieving passage of referendum which changed the form of government in Jackson, Mississippi. As a result of this finding, the court held that plaintiffs were a prevailing party.

The court held that the complexity of the case made the number of hours reasonable. The court held that the hourly rates should reflect the prevailing rate in Mississippi and awarded fees at $100 per hour for one attorney and $60 per hour for another. The court also awarded a multiplier of 25%.

Upon review of the aforementioned cases, the Court finds that the award rendered in this case is in keeping with what other Courts have done.

*Expenses Requested by Counsel in Connection with Principal Litigation*

The Court has adopted most of the recommendations made by the Magistrate in regard to expenses. The majority of the expenses requested by counsel were apparently borne by Scheckman and the Legal Defense Fund.

Steven Scheckman requests reimbursement for expenses totalling $32,240.42. Of this amount, the following amounts were not initially disputed by the State and had been stipulated as reasonable:

| Expert and Professional Assistance | Amount |
|---|---|
| Richard Engstrom | |
| 74.25 hrs @ $100/hr | $ 7,425.00 |
| Joseph Logsdon | |
| 32.00 hrs @ $100/hr | 3,200.00 |
| Raphael Cassimere, Jr. | |
| 34.00 hrs @ $100/hr | 3,400.00 |
| Shirley Laska | |
| 13.0 hrs @ $25/hr | 325.00 |
| Expenses | 56.49 |
| Mapmakers and Supplies | 3,500.00 |
| Photographer | 350.00 |
| Depositions | |
| Treen | 356.40 |
| Hainkel | 99.90 |
| Henderson | 161.90 |
| Selle | 276.14 |
| Logsdon | 70.00 |
| Cassimere, Chehardy | 143.90 |
| Lewis, Engstrom | 128.30 |
| Morial | 446.40 |
| Express Mail | 400.00 |
| **TOTAL EXPENSES** | **$20,339.43** |

However, in light of the recent holding of the Fifth Circuit in *IWA v. Champion International Corp.*, 790 F.2d 1174 (5th Cir.1986), the State now contests all of those items listed as expert witness fees above. In that opinion, the appellate court ordered districts courts "to apply the rule announced today to all pending cases." 790 F.2d at 1181. Accordingly, as to expert witnesses Engstrom, Logsdon, Cassimere and Laska, all expert fee charges over and above the normal court attendance fee of $30.00 per diem shall be disallowed. Since the work billed on behalf of these experts does not establish that a court appearance or depositions were involved, no amount will be awarded on these claims.

As the State does not contest the reasonability of any other above listed amounts, there is no necessity to discuss these items. The Court will award $5,932.94 for these items.

The following fees submitted by Mr. Scheckman are also contested by the State:

| Item | Amount |
|---|---|
| Witness Fees for Depositions of M. Landrieu, E. Bruno, L. Watermeier—$30.00 each incurred 12/18/82 | $ 90.00 |
| Payment to Metropolitan Agency for serving deposition subpoenas and providing mileage incurred 12/13/82 | 256.00 |
| Depositions of M. Landrieu, E. Bruno, and L. Watermeier incurred 12/23/82 | 475.00 |
| Kinko's copying for exhibits incurred 2/28/83 | 555.03 |
| Fees for expert Gordon Henderson | 9,325.00 |
| Travel | 1,200.00 |
| TOTAL EXPENSES | $11,901.03 |

■ The first four above expenses are objected to by the State because plaintiffs failed to comply with a discovery order of the Magistrate. On March 26, 1985, Magistrate Chasez entered an order directed to plaintiffs mandating that the defendants be furnished with any documentation supporting expenses other than expert witness fees claimed in this matter. This documentation was to be furnished to the defendants on or before April 2, 1985. The documentation was submitted somewhat late. However, the Court sees no reason to disallow the expenses as they are fully documented.

Again, expert fees for Gordon Henderson will not be allowed pursuant to *IWA*. Mr. Scheckman seeks reimbursement for travel expenses in the amount of $1,200.00. However, due to Scheckman's inability to produce receipts and other documentation, the Court is unable to verify the expenses as relating to matters connected with this case. Accordingly, of the sums requested by Mr. Scheckman, the total of $7,308.97 will be allowed as reimbursable expenses.

The following constitutes the itemized expenses of Stanley A. Halpin in connection with the principle litigation:

| Date | Item | Amount |
|---|---|---|
| 2/28/83 thru 3/13/83 | Trial and Travel Expenses— Parking, gas, ground transportation | $ 349.50 |
| | Credit card food expenses | 134.62 |
| | Car Rental | 200.00 |
| | Gas | 52.45 |
| | Airfare | 190.00 |
| 1/18/83 thru 1/24/83 | Deposition Travel Expenses Food, parking, misc. | 141.95 |
| | Car Rental | 135.49 |
| | Airfare | 215.00 |
| | Credit card food | 70.24 |
| | Gas | 23.72 |
| 12/17/82 thru 12/19/82 | Travel to New Orleans for case preparation Food, parking | 116.70 |
| | Gas | 23.94 |
| | Airfare | 210.00 |
| | Long distance phone calls | N/C |
| | TOTAL | $1,863.61 |

The major problem with all of these expenses appears to be largely the failure on the part of Mr. Halpin to produce a receipt or any other documentation that the expenses were actually incurred. For example, regarding parking, gas and ground transportation expenses incurred by Mr. Halpin from February 28, 1983 through March 13, 1983 in the amount of $349.50, only $4.50 has been documented by a receipt. For the same time period with regard to the $52.45 in gas reimbursement, only receipts for $15.00 have been produced.

Regarding deposition travel expenses incurred from January 18, 1983 through January 24, 1983, again receipts present a problem on Mr. Halpin's food, parking and miscellaneous expense requests of $141.95. In that instance, receipts have been produc-

ed for only $99.50 of the requested amount. For the time period, December 17, 18, and 19, 1982, receipts have not been forthcoming to support $112.70 of the requested $116.70 in food and parking sought by Mr. Halpin, nor have receipts been forthcoming to support $10.94 of the requested $23.94 in gas reimbursement sought by Mr. Halpin.

■ The Court is of the opinion that defendants' position of calling for strict proof of expense money incurred is well founded. As receipts are not available to support and corroborate the incurring of the aforementioned expense, the amount sought will be reduced to those sums for which a receipt has been provided.

With regard to Mr. Halpin's request for reimbursement for food expenses incurred from February 28, 1983 through March 13, 1983 in the amount of $134.62, the reasonableness of the cost is disputed by the State. Of that amount, $37.45 is attributable to a meal at Chez Helene restaurant and the remainder to one meal at Brennan's. The bill at Chez Helene indicates three people were present, i.e., Mr. Halpin, Ms. Guinier and Mr. Scheckman. The bill at Brennan's is silent as to who was present. Of the amount requested, the total sum of $37.45 will be allowed on the Chez Helene bill. The bill is not exorbitant and there is no basis to determine how much is attributable to each person. On the Brennan bill, $30.00 will be allowed as sufficient for a reasonable meal. All other amounts are disallowed.

The State does not object to the reasonableness of the $200.00 sought by Mr. Halpin for rental car expense nor the $190.00 air fare reimbursement likewise requested.

With regard to the deposition travel expenses incurred January 18 through 24, 1983, the State does not object to the reasonableness of the $215.00 air fare reimbursement sought by Mr. Halpin. However, $90.33 of the $135.49 sought for rental car reimbursement is objected to on the basis that Mr. Halpin was not needed except for January 21st and 22nd in connection with these depositions. The Court will not second guess the wisdom of counsel with regard to remaining for the extra four days in question herein and the full amount of the rental car reimbursement sought by Mr. Halpin will be granted to him.

Of the $70.24 credit card food reimbursement expense for this same time period, i.e., January 18–24, 1983, the State objects to $21.08 of same on the grounds that this amount is attributable to a meal eaten by Mr. Kellogg for which Mr. Halpin paid and now seeks reimbursement. Since Mr. Kellogg, being a native of New Orleans, would not have been entitled to a per diem, the State seeks disallowance of a prorated amount of the total bill which it allows to Mr. Kellogg's food consumption. This is not an exorbitant bill, and the Court will therefore order reimbursement of the full amount to Mr. Halpin.

Of the $23.72 gas reimbursement sought by Mr. Halpin, the State objects to $15.79 on the grounds that Mr. Halpin was not needed in New Orleans except for two of the six days in question. Again, the Court will not second guess the wisdom of counsel on what amounts to a non-consequential expense. Mr. Halpin will be reimbursed for the full amount sought on this item.

With regard to Mr. Halpin's expenses for December 17, 18 and 19, 1982, the $4.00 for which receipts have been furnished the State as to food and parking will be allowed. Despite the fact that the State urges that Mr. Halpin was not needed in New Orleans at this time, the Court will not second guess counsel on such a non-consequential amount. The same rationale holds for the gas reimbursement sought by counsel. Thirteen Dollars ($13.00) in receipts have been furnished to the State and this amount will be allowed to Mr. Halpin. Accordingly, the following amounts will be awarded to Mr. Halpin in connection with the expenses which he has sought.

| Date | Item | | Amount |
|------|------|--|--------|
| 2/28/83 thru 3/13/83 | Trial and Travel Expenses | | |
| | Parking, gas, ground transportation | | $ 4.50 |
| | Credit card food expenses | | 67.45 |
| | Rental car | | 200.00 |
| | Gas | | 15.00 |
| | Airfare | | 190.00 |
| 1/18/83 thru 1/24/83 | Deposition Travel Expenses | | |
| | Food, parking, misc. | | 99.50 |
| | Rental car | | 135.49 |
| | Airfare | | 215.00 |

| Date | Item | Amount |
|------|------|--------|
| | Credit card food | $70.24 |
| | Gas | 23.72 |
| 12/17/82 thru 12/19/82 | Travel to New Orleans for case preparation | |
| | Food, parking | 4.00 |
| | Gas | 13.00 |
| | Airfare | 0 |
| | Long distance phone calls | N/C |
| | **TOTAL** | **$1,037.90** |

C. Lani Guinier requests reimbursement for expenses totalling $18,407.52 in connection with the principle litigation. Of this amount, the following items were not initially disputed by the State and had been stipulated as reasonable.

| Date | Item | Amount |
|------|------|--------|
| 1/10/83 | Motion and brief to Kellogg by Federal Express | $ 32.00 |
| 1/12/83 | Supplementary affidavit to Kellogg by Federal Express | 19.00 |
| 3/11/83 | Trial material to Lani Guinier by UPS | 10.27 |
| 6/9/83 | Findings of Fact & Conclusions of Law, Purolator, to Kellogg | 31.00 |
| 3/11/82 | Compensation to G. Henderson for analysis of data | 3,558.25 |
| 7/14/83 | Court cost | 60.00 |
| 3/28/83 | Shirley Laska, expert witness fee | 381.49 |
| | G. Henderson, expenses only for deposition | 1,654.90 |
| 4/8/83 | J.H. Echezabal, trial transcript | 1,126.85 |
| 5/26/83 | Trial transcript | 658.63 |
| | **TOTAL** | **$7,532.39** |

In light of *IWA*, the State now contests and seeks disallowance of those amounts attributable to experts Henderson and Laska over and above the amount allowed by statute. 28 U.S.C. § 1821. The clear dictate of *IWA* supports defendants' position. The Court will award $30.00 for payment to each expert. As the State does not contest the reasonability of the other above listed amounts, it is not necessary to discuss these items. The Court will award $3,592.65 from these line items.

The following fees submitted by Ms. Guinier are contested by the State:

| Item | Amount |
|------|--------|
| Conference with co-counsel and plaintiffs in New Orleans (LG) in December, 1981 | $ 626.00 |
| Travel to D.C. to review Justice Department files (LG) in June, 1982 | 92.25 |
| Travel to D.C. to review DOJ files (LG) in December, 1982 | 146.00 |
| Hearing on Pre-trial motions, depositions, trial preparation (LG) in January, 1983 | 703.95 |

| Item | Amount |
|------|--------|
| Trial preparation and trial (LG) in March, 1983 | $1,896.67 |
| Post-trial brief, review exhibits, confer with co-counsel New Orleans (LG) in May, 1983 | 508.05 |
| Local taxis (LG) in June, 1983 | 35.65 |
| Hearing, New Orleans (LG) in June, 1983 | 478.59 |
| Hearing, New Orleans (NBW) in June, 1983 | 535.75 |
| Local taxis (LG) in July, 1984 | 10.00 |
| Photocopying at .15 per page from January, 1983 through January, 1984 | 1,289.07 |
| Postage paid on opposition to intervention forwarded to W. Quigley on December 12, 1983 | 34.00 |
| Long distance telephone calls from November 12, 1982 through June 5, 1984 | 166.78 |
| Legal printing paid for July 14, 1983 | 53.50 |
| Service of subpoenas by Associated Investigators paid for February 16, 1983 | 86.65 |
| Expenses of expert G. Henderson in connection with his deposition paid for March 28, 1983 | 1,654.90 |
| Expenses of expert G. Henderson in connection with trial paid on May 31, 1983 | 1,002.19 |
| Services of Janice McCaughan from May 14, 1983 through May 29, 1983—80.5 hours time at $40.00 per hour | 3,220.00 |
| **TOTAL** | **$12,540.00** |

With regard to the first of the hereinabove contested expenses, that being the $626.00 item incurred in December, 1981, the Court disallows $111.71 for lack of a receipt to document this expense. Receipts have been presented in the amount of $450.00 for air fare and $64.29 in connection with hotel expenditures, both of which the Court finds to be reasonable. Accordingly, an amount of $514.29 will be allowed reimbursable to Miss Guinier on behalf of the N.A.A.C.P. Legal Defense Fund. The State has argued that these expenses should be disallowed on the grounds that Miss Guinier had no need to meet with plaintiffs or with co-counsel herein. The fact is, however, that Miss Guinier was a moving force in this litigation. The Court has handled the question of duplication of time and hours spent at an earlier stage of this opinion. Certainly plaintiffs might have carried forward this litigation in a different fashion, but that was not done, and this expense was incurred in bringing this matter to fruition. Accordingly, the State's argument will be disregarded, and the aforementioned sum awarded.

The $92.25 expense in connection with travel to Washington, D.C. to review Justice Department files in June of 1982 will

be allowed. The Legal Defense Fund expense report filled out by Miss Guinier and submitted to her employer has been entered into evidence and is deemed sufficient.

As to the December, 1982 travel, food and lodging expenses regarding Miss Guinier's trip to Washington, D.C. to review Department of Justice files, this entire sum is disallowed. No receipts have been produced to support the payment of the $146.00. The same result will be reached as to the travel, food and lodging expenses claimed by Miss Guinier in the amount of $703.95 in January, 1983. Again, no receipts were produced to substantiate these sums.

On the $1,896.67 requested for food, transportation and lodging in connection with the trial in March, 1983, $860.00 of this amount will be allowed as receipts have been presented to document this sum. The State has argued that this amount should be further reduced because Miss Guinier was not needed for more than six days in New Orleans in connection with the trial, since the time expended by her was duplicative of that spent by other counsel. The Court rejects this argument insofar as legitimate expenses incurred at a time when she was in New Orleans and working on this litigation are concerned. The duplicative nature of the hours of counsel has already been handled at an earlier point in this opinion.

The $508.05 expenditure for food, travel and lodging to New Orleans in May of 1983 requested by Miss Guinier will be denied in its entirety. Included in this amount is $123.51 in hotel bills paid to the Radisson Plaza Hotel in Raleigh, North Carolina. The Court finds no nexus between Miss Guinier's stay in Raleigh, North Carolina and this litigation.

Three hundred eighty-one dollars ($381.00) represent air fare from New York City to Raleigh–Durham on May 3, 1983 and from Raleigh–Durham to New Orleans via Atlanta on May 5, 1983. It likewise includes air fare from New Orleans back to New York on May 8, 1983. Assuming in Miss Guinier's favor that this trip was, in fact, a necessary component of this litigation, obviously the entire amount was not attributable to *Major v. Treen*. It is clear that the stop made by Miss Guinier in Raleigh–Durham was in connection with other litigation which she was handling, namely, *Gingles v. Edmisten*, a case which is totally unrelated to the present matter before the Court. Miss Guinier made no attempt to suggest or prove to the Magistrate or the Court the cost of round trip air flight from Raleigh–Durham to New Orleans and back to Raleigh–Durham, which would be the cost of air fare reasonably attributed to *Major v. Treen*. Since it is Miss Guinier's burden to establish the amount for which she should be reimbursed, this claim will not be adjudicated until Ms. Guinier provides the Court with creditable proof as to the amount which should be allocated to that portion of her air travel from Raleigh–Durham to New Orleans and back to Raleigh–Durham. Ms. Guinier was allowed to so supplement the record by the Magistrate. She has not done so to this date. The entire amount will therefore be disallowed.

The request for reimbursement in connection with fees paid to local taxis in June of 1983 shall be disallowed in its entirety for the failure to present receipts to document these expenses.

The $478.59 requested for food, travel and lodging expenses incurred in June of 1983 in connection with the hearing in New Orleans shall be allowed in its entirety. The State has argued that someone other than Miss Guinier could have argued this motion. The Court will not substitute its judgment for the strategic judgment of counsel viewed with hindsight and will award the full amount of this claim.

The claim of $535.75 for food, travel, and lodging on behalf of Napoleon B. Williams incurred in June, 1983 will be disallowed in its entirety. Mr. Williams was not counsel of record. The Court agrees with the Magistrate's finding that Williams was not actively involved in this litigation and was not necessary to a proper representation of plaintiffs' claims. Therefore, this amount shall be disallowed.

As with other claims where there has been a lack of receipt furnished to the State to substantiate the amount expended, the claim for reimbursement for local taxi fares in July, 1984 will be disallowed.

Miss Guinier requests reimbursement on behalf of the Legal Defense Fund for photocopying in the amount of $1,289.07. Of that amount, $35.55 will be disallowed for lack of a receipt to substantiate the expense. In addition, the State argues that an additional $332.10 should be disallowed as representing excessive or unnecessary photocopying. The Court will allow Miss Guinier to be reimbursed on behalf of the Legal Defense Fund in the amount of $1,253.52. The number of photocopies made herein should not necessarily be limited to the number needed for service on counsel. According to Miss Guinier's affidavit, it was necessary that this photocopying be done, and the Legal Defense Fund will therefore be reimbursed in this amount.

Insofar as the postage necessary to mail the opposition to the intervention to Mr. William Quigley in the amount of $34.00 is concerned, this amount will be disallowed, because no receipts have been provided to substantiate this amount. As there are no receipts to substantiate the full $166.78 on the long distance reimbursement sought on behalf of the Legal Defense Fund, the full amount of this requested reimbursement will not be granted. The amount of $93.70 will be granted as having been verified expenditures. The entire amount requested for legal printing which was paid on July 14, 1983 in the amount of $53.50 will likewise be denied for failure to produce a receipt to substantiate the sum sought.

Reimbursement in the amount of $86.65 is requested in connection with the payment of Associated Investigators for service of subpoenas. The State objects to this expense on the grounds that there is no record or itemized receipt of who was served, for what purpose the service was needed or when the service was accomplished. The Court notes that at the time a requisition was requested from the Legal Defense Fund by Miss Guinier, the charge was categorized as one for special research rather than for service of subpoenas. Although the Court is unsure as to who was to be served or when the service was to be accomplished, either purpose was still necessary for the prosecution of this case. The $86.65 will therefore be allowed.

Reimbursement in the amount of $1,654.90 is sought in connection with the expenses of Gordon Henderson, expert witness, on March 28, 1983 in connection with his deposition. Of this amount, $671.92 will be disallowed, as no receipts were produced to substantiate the sums claimed. Of the amounts for which receipts were produced, $6.00 in ground transportation has been stipulated as reasonable by the State. Air fare in the amount of $524.00 is requested. However, the record reflects that this sum was expended by Mr. Henderson for purposes of traveling from New Orleans to Cincinnati to Dayton by first class instead of by coach. The Court finds that there should be some reimbursement for the amount of this air fare, but on the basis of a coach ticket as opposed to a first class ticket. The Magistrate gave Miss Guinier the option to present some type of proof by way of affidavit from Delta Air Lines, Inc. as to the cost of a coach ticket from New Orleans to Cincinnati to Dayton during the relevant time period. This was not done, and the air fare will therefore be disallowed. The full amount of Mr. Henderson's bill at the Royal Orleans will be allowed, which is $419.23 as well as the restaurant bill at Gins Mee Hong Restaurant for $38.75. The Court will exercise its discretion and allow reimbursement for the expenses of an out of town witness like Mr. Henderson for $463.98. *Dasher v. Mutual Life Ins. Co. of N.Y.*, 78 F.R.D. 142 (S.D.Ga.1978).

Expenses in the amount of $1,002.19 paid to G. Gordon Henderson in connection with his trial appearance before this Court is sought. This amount will be denied in its entirety, because no receipts have been produced to substantiate the amount requested.

Lastly, reimbursement is sought for the services of Janice McCougham, a law stu-

---

dent working at the behest of Ms. Guinier on certain aspects of this litigation. After review of this time sheet, the Court does not feel all of these hours were necessary. Liberal amounts of time have been allowed counsel of record in this litigation to properly represent their respective clients. The Court will therefore award expenses for 40 hours at $10.00 per hour for a total of $400.00.

Of the contested amounts, the following constitutes the expenses allowed to Ms. Guinier on behalf of the Legal Defense Fund:

| Item Requested by Legal Defense Fund for Travel, Food and Lodging | Amount Allowed |
|---|---|
| Conference with counsel and plaintiffs in New Orleans—December, 1981 | $ 514.29 |
| Travel to Washington to review Justice Department files—June, 1982 | 92.25 |
| Travel to Washington to review Justice Department files—December, 1982 | –0– |
| Hearing on pre-trial motions, depositions and trial preparation—January, 1983 | –0– |
| Trial preparation and trial—March, 1983 | 860.00 |
| Post-trial brief, review of exhibits, confer with co-counsel in New Orleans—May, 1983 | –0– |
| Local taxis—June, 1983 | –0– |
| Hearing in New Orleans—June, 1983 | 478.59 |
| Hearing in New Orleans (Napoleon B. Williams)—June, 1983 | –0– |
| Local taxis—July, 1984 | –0– |

| Item Requested by Legal Defense Fund for Travel, Food and Lodging | Amount Allowed |
|---|---|
| Photocopying | $1,253.52 |
| Postage in connection with transporting opposition to intervention to W. Quigley | –0– |
| Long distance telephone calls | 93.70 |
| Legal printing | –0– |
| Associated Investigators for service of subpoena—February 1983 | 86.65 |
| Gordon Henderson expenses for deposition, plus an undetermined amount for air fare—March, 1983 | 463.98 |
| Expenses—Gordon Henderson in connection with trial plus an undetermined amount for air fare—May 31, 1983 | –0– |
| Services of Janice McCaughan | 400.00 |
| TOTAL | $4,242.98 |

The Court will therefore award a total of $7,835.63 to C. Lani Guinier as representative of the Legal Defense Fund for expenses incurred in the principal litigation.

 The Court will now turn its attention to the request of plaintiffs' counsel for attorneys' fees for litigating the above captioned motion to assess fees. After reviewing the record, the Court has adopted the majority of the Magistrate's recommendations. Again, the *Johnson* factors will be considered as a part of determining the loadstar.

The following constitutes the amounts sought by counsel for fees and expenses expended in the determination of attorney fees:

### FEES AND EXPENSES ON MOTION FOR ATTORNEY'S FEES

| Attorney | Total Hours | Hourly Rate | Total Fee | Total Expenses |
|---|---|---|---|---|
| Stanley A. Halpin | 73.75 | $160.00 | $ 11,800.00 | $ 437.40 |
| C. Lani Guinier | 60.0 | $160.00 | $ 9,600.00 | $ 1,815.80 |
| R. James Kellogg | 46.25 | $135.00 | $ 6,243.75 | –0– |
| Steven Scheckman | 34.6 | $125.00 | $ 4,325.00 | –0– |
| William P. Quigley | 39.65 | $125.00 | $ 4,956.25 | –0– |
| Armand Derfner | 25.9 | $175.00 | $ 4,532.50 | $ 229.65 |
| Larry Menefee | 562.4 | $120.00 | $ 67,488.00 | $16,187.84 |
| Julius Chambers | 15.0 | $300.00 | $ 4,500.00 | $ 732.35 |
| Total | 857.55 | | $113,445.50 | $19,403.04 |

The plaintiffs have also requested a multiplier of two which would give a total attorney fee award in connection with the motion to assess fees of $226,891.00.

*A. Time and Labor Required*

1. Novelty and Difficulty of the Question

The matter of calculating fees herein did not present a novel or difficult question. It was basically the collection of bookkeeping information in order to ascertain number of hours, hourly rate and customary fee.

2. Time Limitations Imposed by the Client or the Circumstances of the Litigation

Again, this litigation proceeded along a reasonable time table. The Court perceives

no undue constraints upon counsel in meeting this Court's deadlines.

### 3. The Amount Involved and the Result Obtained

Plaintiffs seek approximately $800,000.00 in connection with this fee application. The result obtained is to recover approximately 45 percent of that amount.

### 4. Hours Allowed

*C. Lani Guinier* seeks 60 hours time at $160.00 per hour for a total fee of $9,600.00. With regard to the itemized statement of attorney time designated in Appendix A on plaintiffs' exhibit 8 for the time period July 27, 1984 through October 24, 1985, the Court disallows all telephone conversations with Mr. Quigley and Mr. Kellogg re attorneys' fees. Mr. Quigley and Mr. Kellogg did not represent Miss Guinier in the attorney fee hearing and such discussions between co-plaintiffs are not productive to moving this matter forward expeditiously. Therefore, 3.9 hours will be disallowed from this billing.

On Miss Guinier's statement of attorney time from November 18, 1984 through March 29, 1985, the Court makes the following allowances:

| Services Rendered | Hours Allowed |
|---|---|
| Conversation with Larry Menefee on 10/24/84 | .6 |
| Conversation with Larry Menefee—11:30 to 12:05 on 11/19/84 | .6 |
| Preparation for deposition on attorneys' fee motion—7:30 to 9:30 p.m. on 11/20/84 | 2.0 |
| Review time slips, etc., for deposition 11/21/84. All other time billed on 11/21/84 is disallowed. | 1.0 |
| Telephone conversation with Larry Menefee—11:35 to 12 noon—discussion re deposition on 11/26/84. All other itemizations on this date are disallowed. | .4 |
| Entries for 11/27/84 of .4 hours. All of these entries are disregarded. | .0 |
| Travel to Washington, D.C. to deposition and preparation on plane on 11/28/84 | 3.0 |
| Met with Larry Menefee for 45 minute deposition by Kendall Vick—1½ hours on 11/29/84 | 2.3 |
| Reviewed and corrected deposition—12/11/84 | 1.0 |
| Meeting with Quigley and Kellogg—12/13/84 disallowed in its entirety | –0– |
| Conversation re attorneys' fees with Armand Derfner—12/19/84 disallowed in its entirety | –0– |

| Services Rendered | Hours Allowed |
|---|---|
| Thirty minutes reviewing Larry Menefee's draft motion setting case for Judge—1/23/85—disallowed entirely | –0– |
| Conversation with Larry Menefee and Richard Lawson re attorneys' fees—1/30/85 | .4 |
| Conversation with Larry Menefee re defendants' motion to produce. Reviewed Menefee's letter—3/15/85. | .5 |
| Production of documents for defendants pursuant to court order—3/18/85 | 1.8 |
| Preparation of response to defense motion for production of documents—3/22/85 | 2.5 |
| Preparation of response to defense motion to produce documents—3/25/85 | 1.9 |
| Conversation with Menefee re production of documents in response to defense motion on attorneys' fees—3/25/85 | .3 |
| Preparation of response to defendants' request for documents per court order—3/26/85 | 2.1 |
| Conversation with Larry Menefee re preparation of response to defendants' request for production—3/27/85 | 3.0 |
| Conference with Bill Quigley and Steve Scheckman re preparation of response to defendants' request to produce—3/28/85. Disallowed entirely. | –0– |
| Conversation with Stan Halpin re deposition of Martin Feldman—3/24/85. Disallowed entirely. | –0– |
| Attended deposition of Gervis Leonard from 9:15 to 11:45, travel from Gervis Leonard's office to Legal Defense Fund office and discussed strategy re Department of Justice deposition from 11:45 to 1:00 p.m. on 4/24/85. Disallowed entirely. | –0– |
| Conversation with Larry Menefee re hearing on 4/29/85 | .4 |
| Conversation with Stan Halpin re Feldman's deposition. Disallowed entirely. | –0– |
| Preparation of supplemental affidavit and exhibits work on 5/1/85 | 1.9 |
| Review of Gervis' closing statement—5/1/85 | –0– |
| Preparation of supplemental affidavit and preparation for hearing on 5/2/85 | 2.7 |
| Conference with co-counsel and expert re hearing before Magistrate and travel and reviewing defense objections and exhibits on 5/5/85 | –0– |
| Hearing before Magistrate and various conference with counsel on 5/6/85 | 10.0 |
| Court appearance on 5/7/85 | 8.3 |
| TOTAL | 46.7 |

In all other respects, Ms. Guinier's requests for compensation in connection with the fee hearing are DENIED.

*William Quigley* requests compensation for 39.65 hours for his work in connection with assessment of attorneys' fees. By way of a supplemental affidavit, Mr. Quigley has specified the activity, the date and the time for which he seek reimbursement. The following constitutes the activities for which the Court grants compensation to Mr. Quigley:

| Services Rendered | Hours Allowed |
|---|---|
| Preparation of attorneys' fees affidavit from records—2/9/84 | 5.75 |
| Deposition preparation, deposition and meeting with Menefee re discovery—1/7/85 | 2.5 |
| Letter to Court and letter to Menefee re change of address—1/15/85 | .1 |
| Received and reviewed Louisiana interrogatories and letter from counsel—3/17/85 | .7 |
| Pretrial conference and meeting with counsel regarding trial preparation—3/30/85 | 2.5 |
| Preparation of expert affidavits and letters to experts, preparation of supplemental expense, research affidavits—4/5/85 | 1.5 |
| Received and reviewed Louisiana objections to hours | 1.2 |
| Telephone conference with Larry Menefee re testimony—5/3/85 | .5 |
| Meeting with all counsel re trial preparation—5/5/85 | 1.2 |
| Trial and trial preparation re exhibit maps, documentation for hours—5/6/85 | 10.0 |
| Trial—5/7/85 | 8.0 |
| Preparation of affidavit to State—5/10/85 | 1.5 |
| Preparation of affidavit for State—5/28/85 | 3.5 |
| **TOTAL** | **38.95** |

In all other respects, the activities for which Mr. Quigley seeks reimbursement are DENIED.

*Steven Scheckman* seeks reimbursement for 34.6 hours in connection with the fee petition. The following constitutes the items for which the Court allows reimbursement to Mr. Scheckman:

| Services Rendered | Hours Allowed |
|---|---|
| Preparation of affidavit and time sheet from records—1/19/85 | 2.0 |
| Deposition of Attorney General's Office—1/7/85 | 2.0 |
| Analysis for Larry Menefee of number of depositions with number of attorneys for each party and number of exhibits, including subparts and letter re same to Menefee—2/13/85 | .8 |
| Preliminary review and analysis of State's objections to our attorneys' fee request—4/9/85 | .9 |
| Attorneys' fees trial and preparation for trial—5/6/85 | 11.0 |
| Attorneys' fees trial (I did not attend the entire day)—5/7/85 | 2.0 |
| Preparation of supplemental affidavit and time sheet—5/11/85 | .7 |
| Preparation of testimony by review of State's objection to my fee request, detail analysis of State's exhibits A–K and outline of other testimonial topics of importance—5/11/85 | 2.0 |
| Attorneys' fee trial—5/14/85 | 4.2 |
| Preparation of affidavit re State's objections to my fee request—6/2/85 | 3.5 |
| **TOTAL** | **29.1** |

In all other respects, Mr. Scheckman's requests for compensation in connection with the fee hearing is DENIED.

*R. James Kellogg* has petitioned the Court to allow 46.2 hours in compensable time in connection with the attorney fee litigation. The following constitutes the items which will be allowed to Mr. Kellogg:

| Services Rendered | Hours Allowed |
|---|---|
| PCT Patricia Bowers re attorneys' fees—3/19/84 | .25 |
| Meet with Ms. Bowers—4/2/84 | 1.50 |
| Phone calls with Bowers and Guinier—4/9/84 | .50 |
| Phone call with Menefee, Lani, Bill and Steve—6/15/84 | .50 |
| Phone call to Menefee—9/6/84 | .25 |
| Phone call from Menefee—11/20/84 | .50 |
| Deposition—1/7/85 | 1.00 |
| Response to request for production of documents pursuant to court order—3/10/85 | 2.00 |
| Ibid—3/12/85 | 2.00 |
| Letter to Menefee re request for production—3/13/85 | .25 |
| Review Louisiana interrogatories and letter from counsel—3/17/85 | 1.25 |
| Phone call from Menefee—3/29/85 | .25 |
| Preparation for testimony; meet with Larry, Frank, Stan, etc.—5/4/95 | 2.00 |
| Review deposition and prepare testimony; attorneys' fees hearing—5/5/85 | 10.50 |
| Fees hearing—5/6/85 | 7.50 |
| Fees hearing—5/14/85 | 3.50 |
| Preparation of affidavit of objections—5/22/85 | 3.50 |
| Preparation of supplemental fees application—6/6/85 | 1.50 |
| **TOTAL** | **38.75** |

In all other respects, the services for which Mr. Kellogg seeks reimbursement will be disallowed.

In connection with the motion for attorneys' fees, *Stanley Halpin* has requested compensation for 73.75 hours. Of that requested amount, the following time will be granted to Mr. Halpin as compensable:

| Services Rendered | Hours Allowed |
|---|---|
| Response to defendants' discovery regarding fees, document production, interrogatories—11/19/84 | 2.25 |
| Response to defendants' discovery, documents to be provided—11/24/84 | 1.75 |
| Preparation for Feldman deposition, review of materials produced by discovery from Feldman's firm—4/20/85 | 1.75 |
| Preparation for Feldman deposition—4/24/85 | 1.75 |
| Preparation for testimony, review of defendants' objections to specific time items (1.5); prepare with Menefee, review materials (2.0) in preparation for hearing—5/5/85 | 3.50 |

| Services Rendered | Hours Allowed |
|---|---|
| Hearing before Magistrate regarding fees; testimony of Strickler, Leonard, etc. (5.5); Halpin testimony (3.0)—5/7/85 | 8.50 |
| Dictation of supplemental affidavit in response to defendants' objections H, I, J, K—5/18/85 | 2.75 |
| Dictation of supplemental affidavit in response to defendants' objection L (expenses) and remainder of affidavit—6/1/85 | 1.25 |
| Confer with L. Menefee (2.25); deposition of S. Halpin re fees (3.0)—11/27/84. All other items billed for that date are DENIED. | 5.25 |
| Preparation for Feldman deposition, reading and analysis of Leonard's deposition (2.5); deposition of Judge Feldman (2.0)—5/1/85. All other items billed for that date are DENIED. | 4.5 |
| Hearing before Magistrate regarding fees—5/6/85. All other items billed for that date are DENIED. | 6.00 |
| Preparation for hearing and hearing—5/14/85. All other items billed for that date are DENIED. | 4.00 |
| TOTAL | 43.25 |

All other items requested by Mr. Halpin will be DISALLOWED.

In connection with the motion for attorneys fees, *Armand Derfner* has requested compensation for 25.9 hours. The following constitutes the allowed items:

| Services Rendered | Hours Allowed |
|---|---|
| Letter to Jones re subpoena—4/18/85 | .5 |
| Review correspondence, subpoena, and research—4/19/85 | 2.9 |
| Research—4/21/85 | 2.6 |
| Draft enforcement pleading—4/22/85 | 2.3 |
| Motion to quash, draft opposition, telephone Iselin, Menefee and Court—4/23/85 | 3.0 |
| Complete and file opposition—4/24/85 | 1.7 |
| Telephone Hebert, Hancock—4/25/85 | 2.4 |
| Supplemental declaration—5/5/85 | 1.1 |
| TOTAL | 16.5 |

*Larry Menefee*, counsel representing the aforementioned attorneys in this motion to assess fees, requests compensation for a total of 562.4 hours in connection with the fee litigation. The State has acknowledged that it has no objection to the number of hours billed by Mr. Menefee for his legal work other than those hours incurred for travel. The Court concurs with the defendant in this regard. There has been no showing of necessity to hire out of town counsel to handle the attorney fee matter. Competent counsel were present in New Orleans who could have been employed, or, alternatively, Messrs. Kellogg, Quigley or Scheckman could have handled this aspect of the case. The Court finds that 38 hours were expended on travel to and from New Orleans. Accordingly this will be disallowed from the 562.4 hours requested by Mr. Menefee, for a total of 524.4 compensable hours. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir.1982).

There are several reasons why the Court has disallowed all other items requested by counsel other than those listed. First, counsel on the main demand exercised their discretion and hired Mr. Menefee, a stranger to the principle litigation, to represent them in the fee hearing. At the point that original counsel became clients to Mr. Menefee, there is no need that they charge, and that the State pay for, time spent in discussing strategy with co-counsel, reviewing depositions, sitting in on depositions and looking over Mr. Menefee's shoulder in their representation. They cannot assume the role of counsel and client at the same time. As counsel for a prevailing party, the original five attorneys are entitled to reasonable compensation when they litigate their own claims for entitlement to Section 1988 fees. *Johnson v. University College of the University of Alabama in Birmingham*, 706 F.2d 1205 (11th Cir. 1983); *Johnson v. Mississippi*, 606 F.2d 635 (5th Cir.1979). It is not appropriate in every case for an attorney to hire counsel to prosecute his Section 1988 fee application, and where this is done, it is the exception rather than the rule. *Jonas v. Stacks*, 758 F.2d 567 (11th Cir.1985). Since fees are being allowed to Mr. Menefee under a set of circumstances wherein it is marginal whether or not plaintiffs needed to hire him to pursue this attorney fee question, the Court is very careful that there be no duplication of effort on the part of counsel and Mr. Menefee for which compensation is being allowed to both. Instead, the Court is making every effort to grant compensation for time expended by all counsel which constituted a bare bone necessity in carrying through with the litigation of this motion.

There is also authority for the fact that Mr. Menefee is improperly before this Court seeking a fee as he was not counsel of record in the initial litigation. *Jonas v.*

*Stacks,* 758 F.2d at 569. However, since counsel who benefitted from Mr. Menefee's representation could supplement their fee application to include this fee as a cost and/or expense, the Court will address the issue as though Mr. Menefee were properly before the Court in order to completely dispose of plaintiffs' Section 1988 claim.

Julius Chambers of the Legal Defense Fund, who traveled to New Orleans to give the oral arguments on the motion for attorneys' fees, has requested reimbursement for 15 hours. The Court will allow those hours because they would have probably been billed by C. Lani Guinier or some other member of the Legal Defense Fund.

The Court thus finds that counsel for plaintiffs and Mr. Menefee should receive attorneys' fees for a total of 737.65 hours divided as follows:

| Attorney | Hours Allowed |
|---|---|
| Stanley Halpin | 43.25 |
| Lani Guinier | 46.7 |
| James Kellogg | 38.75 |
| Steven Scheckman | 29.1 |
| William Quigley | 38.95 |
| Armand Derfner | 16.5 |
| Larry Menefee | 524.4 |
| Julius Chambers | 15.0 |
| TOTAL | 752.65 |

The Court will now turn to the hourly rate for the fee litigation.

### B. The Length of the Relationship with the Client

The Court cannot comment on the length of the relationship nor whether these attorneys will again employ Mr. Menefee to assist them in obtaining collection of their fees.

### C. Preclusion of Other Employment

Fee counsel suffered very little preclusion of other employment because they employed Mr. Menefee to represent them in this litigation. Preclusion of employment, as far as Mr. Menefee is concerned, is of no consequence. Mr. Menefee will be paid an hourly rate for his efforts in this matter.

### D. Undesirability of the Case

The Court sees nothing undesirable on the part of counsel in pursuing fees earned in connection with their efforts on the main demand.

### E. The Requisite Legal Skill

These attorneys involved in this litigation were not operating in the field of their expertise in litigating this attorney fee motion. This proceeding required tedious gathering of information and supplementing the information with receipts to back up expenses. The matter required far more bookkeeping and accounting skills than it did legal skills.

### F. The Experience, Reputation and Ability of the Attorneys

This has been commented upon under the same category in connection with the main demand. As far as Mr. Menefee's work is concerned, he also has an excellent reputation and has conducted himself with extreme professionalism throughout the litigation.

### G. Fixed or Contingent Fee

Counsel handled this matter on a contingency fee basis. That is to say, no monies were received during this litigation to compensate Mr. Menefee or fee counsel for services rendered. However, there was very little risk of failure on the part of plaintiffs in this particular piece of litigation.

### H. The Customary Fee

Fee counsel have requested compensation at the same rate for which they sought compensation on the main demand. It is, however, unwarranted to grant counsel his or her best hourly rate attainable in their field of expertise when they are not functioning in an area where their expertise is needed. *Flowers v. Wiley,* 675 F.2d 704 (5th Cir.1982). The Court is of the opinion that an hourly rate of $80.00 for original counsel is sufficient on the fee application. As to Mr. Menefee, an hourly rate of $100.00 is appropriate to reflect his added responsibility in coordinating this effort.

Julius Chambers has requested an hourly rate of $300.00 for his work in this case. Mr. Chambers is director-counsel for the NAACP Legal Defense and Education Fund and has spent the last twenty years in civil rights litigation. Mr. Chambers is well known and widely respected in the civil rights field, and his affidavit indicates that his normal non-contingent fee is $300.00 per hour. The Court finds that Mr. Chambers' expertise in the civil rights area was not fully used in this fee application. Accordingly, the Court will award a rate of $120.00 per hour to Mr. Chambers.

*I. Awards in Similar Cases*

The Court is of the opinion that an hourly rate of $80.00 is in line with the awards in other litigation. *See Flowers v. Wiley,* 675 F.2d 704 (5th Cir.1982); *Bolden v. City of Mobile,* No. 75–297–P (S.D.Ala.1983). The Court declines to grant a multiplier in connection with the attorney fee litigation, seeing no reason to augment a fair hourly rate.

*Expenses*

In connection with the motion for attorneys' fees, Stanley Halpin has requested $437.40 in expense reimbursement. Of the amounts requested, the following will be granted by the Court:

| Item | Amount Allowed |
|---|---|
| Mileage, round trip, Lafayette to New Orleans, 272 miles at .21 per mile—11/27/84 | $ 57.12 |
| Mileage, round trip, Lafayette to New Orleans, 272 miles at .21 per mile—5/1/85 | 57.12 |
| Lunch, Crepe Nanou—5/1/85 | 5.45 |
| Mileage, round trip, Lafayette to New Orleans, 272 miles at .21 per mile—5/6/85 | 57.12 |
| Dinner, Tortia Flats—5/6/85 | 14.22 |
| Hotel charge, Hotel Richelieu—5/5/85 and 5/6/85 | 133.20 |
| Mileage, round trip, Lafayette to New Orleans, 272 miles at .21 per mile—5/14/85 | 57.12 |
| Dinner at Eddie's—5/14/85 | 10.50 |
| TOTAL | $391.85 |

The Court awards these amounts based on the fact that the mileage charged is a standard amount acceptable to most businesses. The other amounts are allowed based on the fact that Mr. Halpin has presented receipts to substantiate these payments. Of the other items requested, there have been no receipts presented to the Court, and, therefore, these amounts will be disallowed.

Larry Menefee claims he should be reimbursed for $21,042.09 in expenses incurred from the attorney fee hearing. The State objects only to Mr. Menefee's expenses in four areas. First, travel expenses related to his travel to New Orleans are questioned. These expenses will be disallowed in their entirety. There has been no showing to this Court that competent counsel was not available in New Orleans for purposes of representing fee counsel. Mr. Menefee's travel expenses to and from the City therefore were unnecessary and shall not be charged to the State. The Court has examined Mr. Menefee's affidavit as to expenses and finds that the sum of $1,454.78 relates to his travel expenses to and from the New Orleans metropolitan area.

The State objects to reimbursing Mr. Menefee for postage expended asserting that postage is a matter of overhead which should be included in the hourly rate. The Court rejects the State's argument in this regard and will allow Mr. Menefee compensation for the full amount of his postage expenses.

Thirdly, the State excepts to reimbursement for meals claimed by Mr. Menefee at Cafe Sbisa in the amount of $62.55; Archna Indian Restaurant in the amount of $64.38; and Restaurant Jonathan for $160.00. Obviously, more than one person enjoyed a meal based on these prices. There has been no showing or discussion as to who the other parties to these meals might have been, and the Court declines to infer that it was Mr. Halpin or Ms. Guinier. The Court will allow $21.00 on the Cafe Sbisa bill; $23.00 on the Archna Indian Restaurant bill; and $40.00 on the bill at Restaurant Jonathan, for a total of $84.00. The State objects to a bill for $481.25 for photocopying requested by Mr. Menefee on the basis that there is no reference as to what was copied or for what purpose, thereby making an evaluation of the reasonableness of the expenses impossible. However, the Court will allow this amount as a bona fide expense.

Plaintiffs also request compensation for two expert witnesses, Frank Parker and Robert Weil, who responded to discovery requests. Apparently, counsel for defendants had agreed to pay for "deposition costs" but did not specify which. Plaintiffs now ask the Court to order payment for the time the witnesses spent in the depositions as well as the time they spent preparing for the depositions. This is not a matter where the witnesses responded to discovery under Rule 26(b)(4)(A)(ii) or (b)(4)(B), Fed.R.Civ.P., where the Court can order payment pursuant to Rule 26(b)(4)(C). In its discretion, the Court will order restitution for the reasonable preparation time plus deposition time for a total of five hours for each of the experts. This is consistent with the Court's interpretation of the agreement between the parties. The State must therefore reimburse plaintiffs for Mr. Weil's services at $180.00/hour for 5 hours—$900.00, and Mr. Parker's services at $150.00/hour for 5 hours—$750.00. The amount of $1,650.00 will therefore be allowed as a bona fide expense.

In light of the recent Fifth Circuit ruling in *IWA, supra,* the sum of $9,251.32 claimed by Mr. Menefee is further disallowed by the Court. This sum represents an amount expended on experts which is not compensable since not specifically provided for by statute. Accordingly, the sum of $9,176.06 will be awarded to Mr. Menefee in connection with his expenses in the handling of the attorney fee litigation.

C. Lani Guinier seeks $1,815.80 in expenses incurred by the Legal Defense Fund in connection with the fee hearing. These expenses are itemized in Appendix B, C, D and E of Ms. Guinier's affidavit entered into evidence as plaintiffs' exhibit 8. With regard to the expenses claimed in Appendix E, the Court allows all amounts requested for photocopying except the $54.30 for photocopying on March 25, 1985. Ms. Guinier has not presented contemporaneous records to support this expense. Rather, the records which she has produced indicate photocopying in the amount of $7.10 and this figure will be allowed for a total of $115.85 in photocopying expenses. The full amounts for postage, telephone and travel will be allowed.

Ms. Guinier presents claims for special research, service of subpoenas and legal printing and mailing. The $5.85 service of subpoena expense will be allowed. The $47.25 expense to Susie Wong for special research is disallowed. The nature of the research is not specified and if it pertains to the attorney fee motion, Ms. Guinier had counsel in the form of Mr. Menefee, who could have performed any such special research required. The $72.75 expense for copying and mailing information from *Gingles v. Edmisten* is disallowed. The nature of the material is not specified nor is the necessity. The $65.75 requested reimbursement outlined in Appendix E is denied in its entirety as being unrelated to the attorney fee motion, having been incurred at a point of time when the main litigation was still ongoing.

The Court will therefore award $1,575.75 to C. Lani Guinier as representative of the Legal Defense Fund for expenses in the attorney fee litigation.

Armand Derfner has requested $229.65 for the services of a law student. The Court will allow this as a proper expense.

Julius Chambers has requested $732.35 in expenses. As they were properly documented and represented bona fide expenditures, the Court will allow that amount.

In conclusion, the following amounts are awarded to counsel for fees and expenses in connection with the main demand:

| Attorney | Fee Award | Cost Reimbursement |
|---|---|---|
| Stanley Halpin | $ 75,210.80 | $ 1,037.90 |
| C. Lani Guinier | 86,585.20 | 7,835.63 |
| R. James Kellogg | 47,120.95 | –0– |
| Steven Scheckman | 16,119.20 | 7,308.97 |
| William Quigley | 35,370.00 | –0– |
| Armand Derfner | 4,158.00 | –0– |
| TOTAL | $264,564.15 | $16,182.50 |

Further, the following amounts are awarded to counsel for fees and expenses in connection with the motion to assess attorneys' fees:

| Attorney | Fee Award | Cost Reimbursement |
|---|---|---|
| Stanley Halpin | $ 3,460.00 | $ 391.85 |
| C. Lani Guinier | 3,736.00 | 1,575.75 |
| R. James Kellogg | 3,100.00 | –0– |
| Steven Scheckman | 2,328.00 | –0– |
| William Quigley | 3,116.00 | –0– |
| Armand Derfner | 1,320.00 | 229.65 |
| Larry Menefee | 52,440.00 | 9,176.06 |
| Julius Chambers | 1,800.00 | $ 732.35 |
| TOTAL | $71,300.00 | $12,105.66 |

**1454**

## APPENDIX A
### Non–Legal Work

**R. James Kellogg** 50%

| Date | Hours | Description | |
|------|------|-------------|------|
| 2–12–82 | 2.5 | Reviewing & organizing documents | 1.25 |
| 2–17–82 | .38 | Department of Justice documents | .19 |
| 3–5–83 | .78 | Phone calls to Secretary of State, Board of Election Supervisors | .39 |
| 3–16–83 | 1.0 | Flow chart of legislation | .50 |
| 3–22–83 | 1.0 | Adding expenses | .50 |
| | | **TOTAL** | 2.83 |

**William P. Quigley** 50%

| Date | Hours | Description | |
|------|------|-------------|------|
| 11–30–81 | .30 | Talking with Bajoie re documents | .15 |
| 12–4–81 | .90 | Comparing 1980 plans with census data | .45 |
| 12–7–81 | 1.16 | Preparing voting rights fact sheets | .58 |
| 12–9–81 | .83 | Conferring with Bajoie's office re Congressional data | .42 |
| 12–10–81 | 2.10 | Newspaper archives | 1.05 |
| 12–29–81 | .50 | Preparing Congressional data | .25 |
| 1–1–82 | 1.92 | Map analysis—G. Henderson Plan, map | .96 |
| 1–15–82 | 1.40 | Preparing map | .70 |
| 1–29–82 | 2.70 | Sending out material to legislature | 1.35 |
| 2–3–82 | 2.18 | Analysis of Congressional data | 1.09 |
| 2–11–82 | .40 | Confering with Delta Reproductions re maps | .20 |
| 2–14–82 | 3.60 | Preparing Congressional maps, etc. | 1.8 |
| 2–19–82 | 1.87 | Preparing and securing maps | .94 |
| 2–22–82 | 2.33 | Preparing statewide maps for Department of Justice | 1.17 |
| 2–12–82 | .20 | Talking with James Gillis—Times–Picayune | .10 |
| 2–8–82 | 2.0 | Analysis for computer print-out | 1.0 |
| 2–9–82 | 1.16 | Collecting and preparing data | .58 |
| 2–17–82 | 2.20 | R. Kwan and research West Bank growth | 1.10 |
| 2–15–82 | 4.50 | Reviewing and indexing documents | 2.25 |
| 2–16–82 | .50 | Reviewing and indexing documents | .25 |
| 2–18–82 | .48 | Telephone conference with legislative office re documents | .24 |
| 1–7–83 | 2.0 | Election returns work-up | 1.0 |
| 1–14–83 | .50 | Maps at Regional Planning Commission | .25 |
| 1–18–83 | 9.50 | Meeting with map people re exhibits | 4.75 |
| 1–19–83 | 2.0 | Preparing demographics and conference with S. Laska | 1.0 |
| 2–20–83 | 1.53 | Meeting with artists re exhibits, meeting with G. Henderson re maps | .77 |
| 2–24–83 | 1.0 | Meeting re maps | .50 |
| 1–26–83 | .23 | Telephone conference with artists | .12 |
| 1–28–83 | .80 | Meeting with map people | .40 |
| 1–31–83 | 1.80 | Meeting re maps, research population majority statistics, confer with exhibit preparation people | .90 |
| 2–7–83 | .60 | Telephone conference with G. Henderson re maps | .30 |
| 2–11–83 | .60 | Meeting with artists | .30 |
| 2–19–83 | 1.0 | Working with photographer | .50 |
| 2–24–83 | .60 | Preparing flow chart | .30 |
| 3–2–83 | 3.07 | Securing demonstrative aids meeting with D. Girard re pictures | 1.54 |
| 3–3–83 | .60 | Meeting with map people re corrections | .30 |
| 3–4–83 | 1.50 | Preparing flow chart | .75 |
| 3–5–83 | 6.30 | Meeting with artists, flow chart work, document and exhibit preparation | 3.2 |

| | | | |
|---|---|---|---|
| 3–14–83 | .50 | Telephone conference with Jack Scott—reapportionment documents and records | .25 |
| 3–30–83 | .20 | Cartographers | .10 |
| 4–1–83 | .10 | Try to get cartographer | .05 |
| 4–5–83 | .30 | Talking with cartographer | .15 |
| | | TOTAL | 34.06 |

**Steven Scheckman** — 50%

| | | | |
|---|---|---|---|
| 12–15–81 | 2.16 | Telephone conference with Attorney General's office re getting copy of Act 20, research on passage of Act from newspaper articles, etc. | 1.08 |
| 12–17–81 | 1.25 | Retrieving back issues of Times–Picayune for history of Act 20 | .63 |
| 12–23–81 | 1.50 | Research at library on history of Act 20 | .75 |
| 12–28–81 | .90 | Reviewing back issues of Times–Picayune re apportionment | .45 |
| 1–14–83 | .55 | Retrieving from Board of Elections office 1982 returns | .28 |
| 1–16–83 | 1.0 | Review of various election returns with Kellogg | .50 |
| 2–9–83 | .90 | Preparing exhibits for trial and preparing index for exhibits | .45 |
| 3–5–83 | 3.67 | Indexing scheme and import of particular documents, preparing visual aids for trial | 1.83 |
| | | TOTAL | 5.97 |

**C. Lani Guinier** — 50%

| | | | |
|---|---|---|---|
| 2–6–82 | .20 | Speaking to district court clerk re subpoena | .10 |
| 1–12–83 | 1.30 | Mailing federal express to Kellogg for filing | .65 |
| 3–19–83 | 3.0 | Calling Department of Justice and arranging to have documents authenticated | 1.5 |
| 3–24–83 | 2.20 | Shipping files to New Orleans in preparation for trial | 1.10 |
| | | TOTAL | 3.35 |

**Stanley J. Halpin** — 50%

| | | | |
|---|---|---|---|
| 12–4–81 | 5.0 | Examining census and other data re possible result for blacks if redistricting occurred | 2.5 |
| 12–6–81 | 4.5 | Examining analysis of census data to determine availability and adequacy of data for analysis of plans | 2.25 |
| 12–21–81 | 4.0 | Analysis of redistricting plans | 2.0 |
| 12–22–81 | 3.5 | Analysis of configuration of plans, cursory exam of ward maps and other geographical and physical features | 1.75 |
| 1–3–82 | 3.5 | Work re maps and data for developing New Orleans district | 1.75 |
| 1–12–82 | 3.5 | Analysis of census and other data | 1.75 |
| 1–8–82 | 2.0 | Factual investigation re history of discrimination and continuing effects | 1.0 |
| 1–9–82 | 1.5 | Calls to line up experts | .75 |
| 2–8–82 | .50 | Telephone conference with Kellogg re deposition schedule | .25 |
| 2–27–82 | 2.16 | Factual investigation with respect to explanation of Morial's and other black victories in New Orleans despite polarization | 1.08 |
| 3–31–82 | 3.38 | Checking Henderson's data on Nunez plan, Act 20 plan | 1.7 |
| 1–1–83 | 2.25 | Miscellaneous matters regarding documentary evidence | 1.13 |
| 5–8–83 | 1.38 | Other administrative matters | .69 |
| | | TOTAL | 18.60 |

## APPENDIX B
### Non–Working Travel Time

**C. Lani Guinier**

| | | | 50% |
|---|---|---|---|
| 4–9–82 | 5.3 | Travel to Washington to meet with Robert Kwan, Department of Justice | 2.65 |
| 1–18–83 | 4.0 | Travel to New Orleans | 2.0 |
| 3–11–83 | 4.0 | Time to arrive at home | 2.0 |
| 5–8–83 | 5.8 | Leave New Orleans (9:45 a.m.), arrive at home (4:30 p.m.) | 2.9 |
| 6–29–83 | 3.5 | Travel to New Orleans— | 1.75 |
| | | TOTAL | 11.3 |

**Stanley J. Halpin**

| | | | 50% |
|---|---|---|---|
| 4–9–82 | 3.0 | No explanation | 1.5 |
| 6–12–83 | 2.13 | Travel to Baton Rouge | 1.07 |
| | | TOTAL | 2.57 |

**Steven Scheckman**

| | | | 50% |
|---|---|---|---|
| 6–30–82 | 2.75 | Travel to Washington to meet with Department of Justice | 1.38 |
| 7–1–82 | 2.44 | Travel to New York City to meet with Legal Defense Fund | 1.22 |
| 7–2–82 | 3.0 | Trip to New Orleans | 1.5 |
| | | TOTAL | 4.1 |

**R. James Kellogg**

| | | | 50% |
|---|---|---|---|
| 6–30–82 | 2.75 | Travel to Washington, D.C. | 1.38 |
| 7–1–82 | 4.75 | Trip to New York City | 2.38 |
| 7–2–82 | 3.0 | Trip to New Orleans | 1.5 |
| | | TOTAL | 5.26 |

**William P. Quigley**

| | | | 50% |
|---|---|---|---|
| 6–30–82 | 3.75 | Travel to Washington to meet with Department of Justice officials and review file | 1.88 |
| 7–1–82 | 3.25 | Trip to New York City | 1.63 |
| 7–2–82 | 2.56 | Trip to New Orleans | 1.28 |
| | | TOTAL | 4.79 |

## APPENDIX C
### Working Travel Time

**R. James Kellogg**

| | | | 50% |
|---|---|---|---|
| 12–18–82 | 2.0 | Trip to Baton Rouge, conference with Quigley and Scheckman | 1.0 |
| | | TOTAL | 1.0 |

**Steven Scheckman**

| | | | 50% |
|---|---|---|---|
| 12–8–82 | 2.0 | Conference with Governor Edwards | 1.0 |
| | | TOTAL | 1.0 |

**C. Lani Guinier**

| | | | 50% |
|---|---|---|---|
| 2–28–83 | 2.0 | Travel to Baton Rouge to meet with Turnley | 1.0 |
| 2–28–83 | 6.0 | Travel with Napoleon Williams, discuss arguments and strategy | 2.5 |
| | | TOTAL | 3.5 |

**Stanley J. Halpin**

| | | | 50% |
|---|---|---|---|
| 2–18–83 | 4.50 | Travel to New Orleans for depositions, prepare en route | 2.25 |
| 2–24–83 | 4.50 | Return travel, review documentary evidence en route | 2.25 |
| 2–28–83 | 6.0 | Travel to New Orleans for trial, prepare in route | 3.0 |
| 3–4–83 | 3.25 | Travel to New Orleans to Baton Rouge for witness prep, conference with Guinier en route | 1.63 |
| | | TOTAL | 9.13 |

## APPENDIX D

The Court finds that the following times were duplicated:

| Date | Time | Attorneys |
|------|------|-----------|
| 6/30/82 | 2.75 | Quigley, Kellogg, Scheckman |
| 7/1/82 | 5.19 | Quigley, Kellogg, Scheckman |
| 11/3/82 | 1.5 | Quigley, Kellogg, Scheckman |
| 11/8/82 | 5.0 | Quigley, Kellogg, Scheckman |
| 1/21/83 | 2.17 | Kellogg, Halpin, Guinier |
| 3/3/83 | 2.35 | Quigley, Kellogg, Halpin, Guinier |
| 1/9/83 | 5.0 | Quigley, Kellogg, Scheckman, Halpin, Guinier |
| 1/ /83 | 2.02 | Quigley, Kellogg, Halpin, Guinier |
| 3/7/83 | 26.5 | Kellogg, Scheckman, Halpin, Guinier |
| 3/8/83 | 24.75 | Quigley, Kellogg, Scheckman, Halpin, Guinier |
| 3/9/83 | 18.0 | Quigley, Kellogg, Scheckman, Halpin, Guinier |
| 3/10/83 | 31.0 | Kellogg, Scheckman, Halpin, Guinier |
| /29/83 | 2.5 | Quigley, Kellogg, Guinier |
| TOTAL | 128.73 | |